Sherri Marie BEHUNIN, Parental Guardian and Next Friend of Jessica Dawn Nesladek, Minor Child, on Her Behalf and on Behalf of All Other Children Similarly Situated, Plaintiffs,

v.

JEFFERSON COUNTY DEPARTMENT OF SOCIAL SERVICES, the Board of County Commissioners of the County of Jefferson, Nelson L. Nadeau, Director of Jefferson County Department of Social Services, Thaddeus Spack, Administrator of Jefferson Co. Department of Social Services, Donna Ross, IVD Supervisor of Jefferson Co. Department of Social Services, and Irene Ibarra, Executive Director of Colorado Department of Social Services, Defendants.

No. 90–C–374.

United States District Court,
D. Colorado.

Sept. 6, 1990.

R. Eric Solem, Legal Aid, Charles Kaiser, Denver, Colo., for plaintiffs.

David Temple, Denver, Colo., G.E. Shields, Lakewood, Colo., Paula M. Ray, Asst. U.S. Atty., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

On behalf of her children and all others similarly situated, Sherri Marie Behunin ("Plaintiff") commenced this civil rights action seeking damages as well as declaratory and injunctive relief. Plaintiff alleges that the defendants violated her rights secured by the Fourteenth Amendment's due process clause, the Fifth and Fourteenth Amendments' taking clauses, and Title IV–D of the Social Security Act, 42 U.S.C. §§ 651–669 ("Title IV–D"), by improperly accounting for and distributing court ordered child support payments.

Defendants Jefferson County Department of Social Services, the Board of County Commissioners of the County of Jefferson, Colorado, Nelson L. Nadeau, Thaddeus Spack and Donna Ross ("Defendants") have moved to dismiss the complaint. They assert: (1) that this court lacks subject matter jurisdiction; (2) that Title IV–D does not create a private right of action under 42 U.S.C. § 1983; (3) that the plaintiff failed to exhaust administrative remedies; (4) that *res judicata* bars the action; (5) that they are immune from suit because of the Eleventh Amendment; and (6) that there is no "case or controversy."

The parties have fully briefed the issues and oral argument would not materially assist the decision process.

### I. Subject Matter Jurisdiction.

Defendants assert that this court lacks subject matter jurisdiction because the plaintiff claims less than $10,000 in damages. The applicable statute declares that: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Ten years have passed since Congress amended § 1331 to eliminate the amount in controversy requirement. Pub.L. No. 96–486, 94 Stat. 2369 (1980). This ground for the defendants' motion to dismiss is frivolous.[1]

Defendants assert that the plaintiff's complaint is too indefinite. No technical form of pleading is required. Rule 8(e)(1), Fed.R.Civ.P. Plaintiff's complaint sufficiently pleads claims that arise under the Constitution and laws of the United States. Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

### II. AFDC: Titles IV–A & IV–D.

Aid to Families with Dependent Children ("AFDC"), also known as Title IV–A, authorizes appropriation of federal funds to assist poor families deprived of one parent's support because that parent is absent, dead or incapacitated. 42 U.S.C. § 601 *et seq.* Funded jointly by the states and the federal government, this program is administered by the states and overseen by the Department of Health and Human Services ("HHS"). To receive federal funds states must, *inter alia*, adopt a child support enforcement program that meets the re-

---

1. Counsel for the defendants is reminded of his duty under Rule 11, Fed.R.Civ.P., and potential exposure to sanctions pursuant to that rule and 28 U.S.C. § 1927 for frivolous and vexatious expansion of the proceedings before this court.

quirements established in 42 U.S.C. § 651 *et seq.* ("Title IV–D"). 42 U.S.C. § 602(a)(27).

Congress adopted Title IV–D:

"[f]or the purpose of enforcing the support obligations owed by absent parents *to their children* and the spouse (or former spouse) with whom such children are living, ... obtaining child and spousal support, and assuring that assistance in obtaining support will be available under this part [42 U.S.C. § 651 *et seq.*] to all children (whether or not eligible for aid under part A) [AFDC]...." 42 U.S.C. § 651 (emphasis added).

Families that receive AFDC must assign to the state their right to receive child support payments from a responsible parent. 42 U.S.C. § 602(a)(26). These families are entitled to the first $50 in support payments collected each month. The state may retain additional payments as reimbursement for AFDC payments. However, if the state collects more from the non-custodial parent than the AFDC payments plus $50, the excess must be paid to the family. 42 U.S.C. § 657(b)(3). The state must notify each family at least annually of the amount of support payments collected on its behalf. 42 U.S.C. § 654(5)(A). A family that does not receive AFDC is entitled to the entire amount the state collects. 42 U.S.C. § 657(c). Plaintiff, and all members of the class she seeks to represent, are custodial parents entitled to child support enforcement services.

Plaintiff assigned to Jefferson County her right to receive support payments from the non-custodial parent. She received $2,228 in AFDC. Pursuant to the assignment, Jefferson County collected $5,250 and gave the plaintiff $2,576.55. Plaintiff was not, however, provided an accounting or an opportunity to object to the amount paid to her. She claims that the defendants' failure to account or provide an opportunity to object violated her statutory and constitutional rights. Defendants assert that Title IV–D does not create rights enforceable under 42 U.S.C. § 1983.

There is no question that § 1983 authorizes claims against those who, acting under color of state law violate rights protected by the Fourteenth Amendment's due process and taking clauses and the Fifth Amendment's taking clause as applied to the States by the Fourteenth Amendment. Therefore, as to the plaintiff's first and fifth claims for relief, the defendants' motion to dismiss must be denied.

■ As a general rule, § 1983 also authorizes suits against state actors who violate federal statutory rights. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). However, the Supreme Court has created two exceptions to the general rule. A plaintiff may not bring a § 1983 action for violation of a statute: (1) if Congress foreclosed private enforcement of that statute in the enactment itself, *Middlesex Cty. Sewage Auth. v. National Sea Clammers,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); or (2) if the statute does not create enforceable rights in the plaintiff. *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). Thus the question is whether, in enacting Title IV–D, Congress intended to create rights enforceable by a § 1983 action, or whether Congress intended to foreclose private enforcement.

■ Nothing in the statute suggests a Congressional intent to foreclose private enforcement of Title IV–D, nor do the defendants assert such foreclosure. However, it is unsettled whether Congress intended to create privately enforceable rights when it enacted Title IV–D.

In *Wehunt v. Ledbetter,* 875 F.2d 1558 (11th Cir.1989), the Eleventh Circuit upheld dismissal of the plaintiffs' Title IV–D based § 1983 claim against the State of Georgia and its Department of Health and Human Services. The court concluded that Title IV–D did not create enforceable rights. In a persuasive dissent, Circuit Judge Clark concluded that Congress intended to create rights enforceable through § 1983 actions. Subsequently, two district courts have agreed with Judge Clark and thus have declined to follow the *Wehunt* majority. *See Carelli v. Howser,* 733 F.Supp. 271 (S.D.Ohio 1990) and *Beasley v. Secretary*

*of Health and Human Services,* 671 F.Supp. 911 (D.Conn.1987). Upon reflection it appears that the position taken by Judge Clark and the *Howser* and *Beasley* courts is sound, and therefore I decline to follow the *Wehunt* majority.

In *Pennhurst,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694, the Supreme Court held that § 6010 of the Developmentally Disabled Assistance and Bill of Rights Act of 1975, 42 U.S.C. § 6000 *et seq.,* did not create substantive rights in favor of the disabled. After considering both the statutory language and legislative history, the court concluded that the Act was meant to "assist" the states in improving the care and treatment of the mentally disabled, reasoning that § 6010 is merely a "general statement of findings" and therefore "too thin a reed" on which to rest an inference that substantive rights had been created. *Id.* at 18, 101 S.Ct. at 1540. The court noted that § 6010 did not impose on the states any conditions for receipt of federal funds, and that regulations explicitly provided that failure to comply with § 6010 would not cause a funding cut off.

The statute here in question is very different. As a condition for receiving matching AFDC funds, a state "must" have and operate a Title IV–D plan. Failure to comply substantially with Title IV–D results in loss of a percentage of AFDC matching funds. The express purpose of Title IV–D is enforcement of support obligations owed to custodial parents and their children. 42 U.S.C. § 651. Contrary to the defendants' assertion that Title IV–D's purpose is to recapture AFDC funds, it contains no language even implying that this is its purpose. The statute expressly provides that its purpose is to assist children and their families in collecting child support owed them.

The *Pennhurst* opinion stressed that the use of precatory, rather than mandatory language was an important factor in reaching its conclusion that § 6010 did not create privately enforceable rights. *Pennhurst* 451 U.S. at 20, 101 S.Ct. at 1541. Unlike § 6010, Title IV–D is mandatory. For example, state child support plans "must pro-vide" that the state "will undertake" a program to establish the paternity of a child born out of wedlock. 42 U.S.C. § 654(4). And, as stated, a family must be notified "at least annually" of the amount of child support collected in its behalf. 42 U.S.C. § 654(5).

The mandatory language of Title IV–D, and its clear intent to benefit children and their families distinguish this statute from the statute considered in *Pennhurst.* I conclude that the primary Congressional intent in enacting Title IV–D was to secure support enforcement services for children and their families. Therefore I conclude that Title IV–D created rights privately enforceable under § 1983.

### III. Exhaustion of Administrative Remedies.

Defendants assert that the complaint should be dismissed for failure to exhaust administrative remedies. In response, the plaintiff claims that she has exhausted her administrative remedies. It is unnecessary for me to decide this question. Exhaustion is not required. "[T]his Court has stated categorically that exhaustion is not a prerequisite to an action under § 1983...." *Patsy v. Florida Bd. of Regents,* 457 U.S. 496, 500–501, 102 S.Ct. 2557, 2559–60, 73 L.Ed.2d 172 (1982).

### IV. Res Judicata Inapplicable.

Defendants assert that the administrative adjudication of the plaintiff's claim is *res judicata,* and therefore the complaint should be dismissed. There is no question that "when a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' ... federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's courts." *University of Tennessee v. Elliot,* 478 U.S. 788, 799, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986). However, the agency decision did not resolve the factual issues here in dispute, nor did the plaintiff have an adequate opportunity to litigate them.

Plaintiff claims that the defendants violated her Title IV–D rights. By statute, the administrative law judge was limited to deciding whether the defendants had acted in accordance with the State Department of Social Services' rules and regulations, a different and much more narrow issue. *Res judicata* does not apply. *Scroggins v. Kansas,* 802 F.2d 1289 (10th Cir.1986).

### V. Eleventh Amendment.

■ Defendants argue that as arms of the state, they are entitled to Eleventh Amendment immunity from suit. The Eleventh Amendment bars suits by private parties in federal court "seeking to impose a liability which must be paid from public funds and the state treasury." *Adelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). As a general rule, Eleventh Amendment immunity does not extend to counties, municipal corporations and other local governmental units. *Moor v. County of Alameda,* 411 U.S. 693, 717–721, 93 S.Ct. 1785, 1799–1802, 36 L.Ed.2d 596 (1973). Therefore, the issue is whether the defendants should be treated, for immunity purposes, as arms of the state.

The Jefferson County Department of Social Services is responsible, through local taxation, for 20% of the funds necessary to defray the costs of public assistance through local taxation. Colo.Rev.Stat. § 26–1–112(1) (1989 Replacement Volume). Moreover, this action seeks an accounting for and payment over of funds collected by the state on behalf of the plaintiff and her children from a private source, the responsible parent. It is premature to characterize that money as state, rather than private, funds. At this early stage of the proceedings, it cannot be said that a judgment against the defendants would be paid from the state treasury, and therefore dismissal at this time is not appropriate.

### VI. Case or Controversy.

■ Defendants assert that there is no case or controversy because they did not cause the plaintiff's alleged injuries. A plaintiff must allege some actual or threatened injury that is fairly traceable to the defendants' action or failure to act, and is of such a nature that it can be remedied by this court's order. Plaintiff has met this requirement.

In her complaint, the plaintiff alleges, *inter alia,* that the defendants obtained a judgment against her former husband, and in satisfaction of that judgment, collected $5,250. The money was distributed to Jefferson County without notice to the plaintiff or an opportunity for her to object or present her claim. If the plaintiff can show that she should have had an opportunity to be heard, damages and/or injunctive relief might be appropriate. Therefore, I find that the plaintiff has stated a case or controversy as required by Article III of the United States Constitution.

### VII. Conclusion.

Reading the facts in the light most favorable to the non-moving party, as I must, I conclude that all the grounds for dismissal asserted by the defendants are without merit.

Accordingly, IT IS ORDERED that the defendants' motion to dismiss is denied.

Before incurring additional attorneys' fees and costs in this action, counsel and the parties are ordered to confer within 20 days in a good faith effort to settle this case. Counsel shall report to the court in writing within 10 days thereafter on the results of their settlement efforts and state whether a settlement conference before a magistrate would be of assistance.