Velda **HOWE**, Theresa Taken Alive, on behalf of themselves, their children and all others similarly situated, Plaintiffs,

v.

James **ELLENBECKER**, in his capacity as Secretary of the South Dakota Department of Social Services,

Terry Walter, in his capacity as Program Administrator, South Dakota Office of Child Support Enforcement, and

Louis Sullivan, in his capacity as Secretary of the United States Department of Health and Human Services, Defendants.

Civ. No. 90–3007.

United States District Court, D. South Dakota, C.D.

Aug. 11, 1992.

---

Krista Clark, Dakota Plains Legal Services, Mission, S.D. and B.J. Jones, Dakota Plains Legal Services, Fort Yates, N.D. for plaintiffs.

Mark L. Bratt, Asst. Atty. Gen. and David L. Braun, Sp. Asst. Atty. Gen., Office of Legal Services/Dept. of Social Services, Pierre, S.D., for James Ellenbecker.

David L. Zuercher, Asst. U.S. Atty., Pierre, S.D. and Lucille Meis, Office of Chief Counsel, Health and Human Services, Denver, Colo., for federal defendant.

## MEMORANDUM ORDER

DONALD J. PORTER, Senior District Judge.

The federal defendant in the above-captioned case has filed a Motion for Reconsideration and Request for Stay Pending Reconsideration. Federal defendant strongly opposes this Court's order filed March 27, 1992, in which the Department of Health and Human Services (HHS) was ordered to negotiate directly with the nine tribes located in South Dakota and to propose to them the possibility of implementing a Tribal Plan that would provide for child support enforcement services on the reservation. This Court had concluded that because the federal statute and regulations refer only to State Plans, neither Congress nor HHS considered the possibility of a semi-sovereign Indian nation existing within the boundaries of a state. The Department of Health and Human Services is the entity that ultimately must approve or disapprove a state's plan based on its degree of compliance with federal law. Because of this role, as well as the State's apparent unsuccessful attempts to provide services to plaintiffs, this Court found that the most efficient and effective approach was to order direct negotiation between the tribes and HHS. Federal defendant asserts that the Court's approach is contrary to law. Specifically, Federal defendant argues that the statute and regulations refer specifically to *State* Plans, that Congress intended the Title IV–D program to be implemented as a "coherent whole" within the state, and that Congress authorized payment of federal monies only to states, not to tribes.

Federal defendant also expresses concern about tribal sovereignty. A Tribal Plan, federal defendant asserts, would have to comply with each and every requirement of Title IV–D and would therefore infringe upon the tribe's right of self-government. State defendants have, on several occasions during the course of this litigation, expressed similar concerns. The State has asserted that neither the State nor this Court can force the tribes to enter agreements or change their tribal laws.

The Court shares these concerns about tribal sovereignty and both recognizes and respects the independent, semi-sovereign status of the nine Indian tribes located within the State of South Dakota. As a result, the March 27, 1992, memorandum order was addressed to the federal defendant, not to the Indian tribes themselves. At no time has the Court suggested it has the authority or the jurisdiction to order a tribe to enter a cooperative agreement or to modify its tribal laws. The inability of this Court to order specific action on the part of the tribes does not, however, leave plaintiffs without avenues for relief. Any order issued from the Court in this case is simply addressed to the parties before it, not to the tribes or tribal officials who lie outside the Court's jurisdiction.

Federal defendant strongly objects to negotiating with the tribes in the manner proposed by the Court's order filed March 27, 1992, on the basis that to do so would be contrary to law. Federal defendant asserts instead that cooperative agreements between the state and the tribal entities are contemplated by § 454(7) of the Social Security Act, 42 U.S.C. § 654(7), and 45 C.F.R. § 303.107 (1990). *See* Federal defendant's Response to Brief of Plaintiffs (Requesting Additional Relief) at 2. The Court appreciates the attempt to seek a solution within the language of the statute itself. The Court finds, however, that just as Tribal Plans were not specifically contemplated by Congress when enacting the statute or by the agency when promulgating the regulations, neither were such state-tribal agreements. The statute and accompanying regulations anticipate cooperative agreements between a state and its own state courts, courts in which state law would necessarily be followed.[1] The statute and regulations simply do not take into account the possibility that these services might be provided in courts, such as tribal courts located within the State of South Dakota, that are not answerable to state law.

Federal defendant also argues vehemently that Congress authorized funding only for states, not for tribes. The initial requirements regarding the necessary laws that must be passed in order to receive funding are the burden of the state, the entity receiving the funding. Federal defendant suggests that as a result of the limited funding authorization, a tribal entity may be party only to a cooperative agreement and not to its own Tribal Plan. As a result, however, the tribe, to which no federal money flows directly and which has no Plan of its own, should not be required to change its tribal laws. A tribal entity, as a party to a cooperative agreement and thus acting more like a state court than the state itself for the purposes of Title IV–D, would need only recognize those federal mandates that apply to the services covered by its particular cooperative agreement.

Finally, Federal defendant objects to the Court's Tribal Plan proposal on the grounds that the semi-sovereign, independent status of the Indian tribes, in part, prevents the implementation of any Tribal Plan as proposed by this Court. Federal defendant contends that under the Court's proposed scheme the tribes would be required to comply with all the federal requirements already mandated of the states rather than simply "picking and choosing" among the several Title IV–D program services applicable to its own particularized cooperative agreement with the state.

■ The Court notes that State defendants initially took a very different position regarding the requirements a tribe would have to meet before obtaining Title IV–D services. This earlier position was the focus of significant dispute among the parties:

> As has been emphasized by the State and Federal Defendants throughout this litigation, before any child support enforcement services can be provided as requested by Plaintiffs herein, the various Indian tribes must meet *any and all requirements* of Title IV–D of the Social Security Act, as the State Defendants

---

1. Also anticipated were purchase of service agreements in which attorneys, working in the state courts, would provide the Title IV–D child support and enforcement services.

have been required to do. In other words, before the State Defendants can avail themselves to the benefits of Title IV–D, including the federal funding as requested by Plaintiffs herein, the State Defendants were, and still are, required to comply with all Title IV–D mandates and requirements. It is the State Defendants' position herein that the tribes must be required to do likewise.

State defendants' letter filed November 14, 1991, in response to Court order filed November 4, 1991 (emphasis original). Nevertheless, the Court finds that the distinction Federal defendant currently makes regarding the requirements a tribal entity must meet provides a sufficient justification for negotiating state-tribal cooperative agreements rather than Tribal Plans in the effort to grant plaintiffs relief. According to the applicable law, the *services* provided pursuant to cooperative arrangements or agreements must conform with Title IV–D requirements. *See* 45 C.F.R. § 304.22; *Howe v. Ellenbecker*, 774 F.Supp. 1224, 1233 (D.S.D.1991). Federal defendant has stated it is prepared to provide federal funding for "cooperative arrangements with tribal entities or purchase of services agreements with private attorneys for the provision of child support enforcement services that comply with the conditions set forth in the Federal statute and regulations." Federal defendant's Response to Brief of Plaintiffs (Requesting Additional Relief) at 4. The services, and the agreements pursuant to which those services would be provided in the tribal court, must adhere to federal law. The Court understands, however, that a tribe would not necessarily have to change its tribal code in order to recognize and comply with the provisions of a given cooperative agreement.

The Court's findings are not intended to imply that a tribe's cooperation is irrelevant to the issue of whether federally funded services would be provided in the tribal courts. The tribes would have to make their courts available for carrying out the federally mandated procedures described in the cooperative agreement, and they would have to recognize these procedures before the child support enforcement services would, or even could, be provided. The Court does not understand, however, that an agreement to provide, for example, genetic testing under the terms of a cooperative agreement and funded largely by the federal government would require a tribe to change its substantive law.[2] How the tribe addresses the issue of genetic testing for establishing paternity in situations independent of the Title IV–D program is of no consequence in determining whether the cooperative agreement complies with federal law. The tribe must simply, as the term suggests, "cooperate" with those requirements when services are being provided pursuant to the cooperative agreement.

Both the federal and the State defendants have expressed a willingness to negotiate, in some manner, with the tribes. The Court recognizes that negotiations with the nine Indian tribes to prepare cooperative agreements for the various services provided under Title IV–D may be qualitatively different than any negotiations undertaken pursuant to this statute in the past. Furthermore, no one questions that the Indian tribes in South Dakota have distinct tribal codes, none identical to the code of the State of South Dakota, which has already been modified to comply with the federal mandates. Yet this Court has determined that "Congress intended all children to benefit from the child support enforcement services established by the statute." *Howe v. Ellenbecker*, 774 F.Supp. 1224, 1231 (D.S.D.1991). Accordingly, the Court urges the parties to approach negotiation with a certain degree of flexibility, a recognition of the distinctive relationship among the state, the tribes, and the federal government, and a willingness to acknowledge that the definition of "compliance," as negotiations progress, may have to be shaped to accommodate the unique situation of the Indian tribes within South Dakota.

---

**2.** Plaintiffs suggested at oral argument that Title IV–D requires states to pass some laws that are simply not applicable to Native American Indian tribes.

The Court seeks a solution most amenable to all parties, but one that will nevertheless achieve the ultimate goal: providing child support enforcement services to plaintiffs. As the federal defendants oppose negotiating directly with the tribes as independent entities capable of carrying out their own Tribal Plans, the Court finds that such an approach would, contrary to its earlier findings, not be the most effective means of granting plaintiffs relief. Accordingly, it is

ORDERED that the directives contained in this Court's March 27, 1992, memorandum order are vacated in their entirety. It is further

ORDERED that State defendants will use every reasonable effort to negotiate a cooperative agreement or purchase of service agreement with each of the nine tribes in the State of South Dakota. This effort will include, but will not be limited to, sending a letter, as proposed by State defendants, to each tribe. The letter will advise the tribes of the benefits of the Title IV–D program and the specifics of the state's child support enforcement program. The State defendants shall then propose a meeting with each tribe in order to describe the program more fully and to answer any questions and address any concerns the tribes may have regarding implementation of the program and use of the tribal courts. The discussions would necessarily include an explanation of the federal participation funding scheme, as this may be an important factor in a tribe's decision whether to enter an agreement with the state. It is also

ORDERED that the federal defendants shall, in concert with the State defendants, co-author the described letter to each of the tribes. The federal defendants shall also attend any meetings with the tribes to discuss implementation of the Title IV–D program and the use of tribal courts. In addition, the federal defendants shall provide technical assistance in establishing agreements between the State and the nine Native American Indian tribes located within South Dakota. Specifically, as federal defendants have expressed a willingness to

do, federal defendants shall help negotiate the agreements with the tribes and examine proposed cooperative agreements. During the negotiations, both federal and State defendants shall make clear that no changes in tribal law are mandated in order for the tribes to arrange for child support and enforcement services to be provided for children who have an Indian absent parent living on the reservation. Rather, the services themselves, and the cooperative agreements that govern them, must comply with federal law before those services may be approved and financially supported by the federal government.

It is therefore

ORDERED that Federal defendant's Motion for Reconsideration is granted in accordance with this memorandum order. It is further

ORDERED that Federal defendant's Request for Stay Pending Reconsideration is granted.

The State defendants have filed a Motion for Reconsideration and Dismissal based upon the recent United States Supreme Court decision in *Suter v. Artist,* 503 U.S. ——, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992). In *Suter,* the Court found that the Adoption Assistance and Child Welfare Act of 1980 "neither confers an enforceable private right on its beneficiaries nor creates an implied cause of action on their behalf." *Suter* at ——, 112 S.Ct. at 1370, 118 L.Ed.2d at 16. State defendants assert that the rationale applied in *Suter* should be applied to the instant case, and that this Court should determine as a matter of law that Plaintiffs have no private enforceable right under Title IV–D of the Social Security Act.

This Court filed its original memorandum opinion in this case on September 18, 1991. Defendants then filed an appeal to the United States Court of Appeals for the Eighth Circuit, which was dismissed on January 28, 1992 for lack of jurisdiction. Accordingly, this Court filed its supplemental memorandum order granting Plaintiffs further relief on March 27, 1992. The Court considers any new legal developments that may affect this Court's original

memorandum opinion, which held that Title IV–D does create an enforceable right in AFDC recipients and that Title IV–D does not permit the exclusion of Indian children who have absent parents living on the reservation from its benefits, a matter for the parties and the appellate court to consider on appeal. Without ruling on the merits of the motion, it is

ORDERED that State defendants' Motion for Reconsideration and Dismissal is denied.