Velda HOWE, on behalf of themselves, their children, and all others similarly situated; Theresa Taken Alive, on behalf of themselves, their children and all others similarly situated, Plaintiffs–Appellees,

v.

James ELLENBECKER, in his capacity as Secretary of the South Dakota Department of Social Services; Terry Walter, in his capacity as Program Administrator, South Dakota Office of Child Support Enforcement, Defendants–Appellants,

Louis W. Sullivan, in his capacity as Secretary of the United States Department of Health and Human Services, Defendant.

No. 92–3354.

United States Court of Appeals,
Eighth Circuit.

Submitted June 16, 1993.

Decided Oct. 13, 1993.

David L. Braun, Pierre, SD, argued (Debra Kant of Dept. of Justice, Washington, DC, on the brief), for defendants-appellants.

B.J. Jones, Fort Yates, ND, argued, for plaintiffs-appellees.

Before RICHARD S. ARNOLD, Chief Judge, JOHN R. GIBSON and MORRIS SHEPPARD ARNOLD, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

James Ellenbecker, Secretary of the South Dakota Department of Social Services, Terry Walter, Program Administrator of the South Dakota Office of Child Support Enforcement, and Donna Shalala, Secretary of the United States Department of Health and Human Services,[1] appeal from a declaratory judgment entered in favor of a class represented by Velda Howe and Theresa Taken Alive,[2] recognizing their rights to enforce claims for child support enforcement services under Title IV–D of the Social Security Act, 42 U.S.C. § 651 *et seq.* (1988), 774 F.Supp. 1224. The district court ordered the federal government and the State to negotiate with the Indian tribes, of which Howe and Taken Alive were enrolled members, in an attempt to reach a cooperative agreement concerning enforcement of child support obligations to their children, 796 F.Supp. 1276. The State ar-

---

**1.** Donna E. Shalala replaced Louis W. Sullivan, M.D., as the Secretary of Health and Human Services on January 22, 1993. The Secretary of Health and Human Services, who was a defendant in the proceedings in the district court, originally appealed the district court's order, but subsequently voluntarily dismissed his appeal.

**2.** Howe and Taken Alive bring this action on behalf of themselves, their children, custodial parents, and children who have absent parents residing on Indian reservations in South Dakota, and all others similarly situated, claiming that they have been denied child support collection services secured under Title IV–D of the Social Security Act, the Child Support and Establishment of Paternity Act, 42 U.S.C. § 651 *et seq.* (1988). This matter was certified as a class action by order filed October 24, 1990.

gues that Howe and Taken Alive have no standing and no private enforceable right under Title IV–D which they may assert in an action under 42 U.S.C. § 1983 (1988). We affirm the judgment of the district court.[3]

Howe is an enrolled member of the Crow Creek Sioux Indian Tribe and lives with her four children in Chamberlain, South Dakota. She receives Aid to Families with Dependent Children (AFDC) benefits for herself and her minor son. As a condition of receiving AFDC, she was required to cooperate with the State in establishing her child's paternity, securing child support for her children, and assign the right to receive the child support for her son to the State. She claims that despite her willingness to cooperate with the State and identify her son's father, the State made no effort to establish the paternity of her son because the putative father lives on a South Dakota Indian reservation.

Taken Alive receives AFDC benefits for her minor daughter. She has custody pursuant to a judgment and decree of divorce from the Standing Rock Sioux Tribal Court, which required the father to pay child support in the amount of $300.00 per month to Taken Alive. Taken Alive claims that although she informed the South Dakota Office of Child Support Enforcement of the divorce decree, the OCSE has refused to attempt to collect child support because the father lives on a South Dakota Indian reservation.

The district court describes the AFDC program as a "federal-state cooperative effort administered by the states." *Howe v. Ellenbecker*, 774 F.Supp. 1224, 1226 (D.S.D. 1991). Under the program, states make monetary payments to financially needy families, including children deprived of parental support. 42 U.S.C. § 601 *et seq.* Although state participation in the program is not required, if a state enters the program, it must operate its plan in compliance with the statutory requirements and regulations promulgated by the Secretary of Health and Human Services. The Act requires every participating state to have a plan in effect for child support collection which meets the Act's minimum standards, 42 U.S.C. § 651 *et seq.*

Since 1950, the federal government has continued to revise the requirements governing efforts by states to enforce child support. In 1984, Congress enacted an amendment requiring states to pass laws for mandatory wage withholding and liens, as well as requiring paternity establishment services for both AFDC and non-AFDC families. *See* Child Support Enforcement Amendments of 1984, Pub.L. No. 98–378, *codified at* 42 U.S.C. § 651 *et seq.* (1988). Shortly thereafter, Congress passed the Deficit Reduction Act of 1984 which provided that when a non-custodial parent of an AFDC child makes a support payment to the state pursuant to a Title IV–D plan, the AFDC family receives the first fifty dollars collected without any reduction in the amount of assistance they receive under the plan each month. Pub.L. No. 98–369, *codified at* 42 U.S.C. § 657(b)(1) (1985). If a state fails to comply with any of the Title IV–D child support enforcement regulations, it risks losing federal matching funds.

South Dakota follows differing approaches to child support enforcement depending on whether or not the absent parent lives within an Indian reservation. In cases where the absent parent does not live on an Indian reservation, upon receiving an application from a parent requesting collection assistance, the South Dakota Office of Child Support Enforcement first attempts to locate the absent parent. The OCSE then sends a notice of support debt to the absent parent requesting financial data so that the OCSE can determine the amount owed. The OCSE next attempts to obtain a stipulation from the absent parent admitting paternity and agreeing to pay the amount owed. Finally, if the absent parent refuses to stipulate to paternity or the amount owed, the OCSE turns the case over to counsel who attempts to obtain paternity determinations and support orders through the state courts.

If the absent parent lives and works on the reservation, the OCSE attempts to locate the absent parent and seeks a stipulation of paternity and the amount owed. However, because the state courts lack jurisdiction over parents residing on the reservations, the State cannot pursue these parents through

3. The Honorable Donald J. Porter, United States District Judge for the District of South Dakota.

the state courts. The State has had little success in its efforts to enforce state court orders on the reservations because of jurisdictional barriers. Moreover, the State does not use tribal courts to pursue the absent parents, in part, because the federal government will not provide matching funds for pursuing child support claims through the tribal courts. Each of the nine tribes located in South Dakota operates a tribal court system having jurisdiction over tribal members, and the State may use them to bring paternity and child support actions.

The district court rejected the arguments of the federal and state governments that Title IV–D does not afford individuals a private right of action under section 1983, and that they do not have standing to bring this action. The court found that the Secretary's interpretation that Title IV–D precluded federal financial assistance to states which pursue absent parents who reside and work on Indian reservations when the tribe does not comply with the Title IV–D regulations was unreasonable. The district court concluded that the State could provide enforcement services through contractual agreements with attorneys, and that the State could use tribal courts to pursue absent parents without contradicting the regulations. The court reasoned that in enacting Title IV–D, Congress did not intend to permit exclusion of a large percentage of Indian children from its benefits, and accordingly, that the State must provide them with the services they are entitled to receive.

The court ordered the federal government to attempt to negotiate with the tribes in South Dakota a tribal plan which would be statutory, regulatory, as well as functionally equivalent of a state plan as described in Title IV–D. The court concluded that the state and federal governments should reach every effort to negotiate a cooperative agreement with each of the nine tribes.[4] The parties do not attack the extent of the remedy, and accordingly, we need not discuss the remedy in detail.

The only issue on appeal is the propriety of the district court's determination that Howe and the class have standing, and that they have a private enforceable right to sue under 42 U.S.C. § 1983. We review this ruling under a de novo standard.

■ In order to have standing in federal court, plaintiffs must show that they have suffered or are about to suffer a "personal injury" that is "fairly traceable" to the defendant's conduct, and that the injury is "likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). Because standing is determined by the specific claims presented, *International Primate Protection League v. Administrators of Tulane Educ. Fund,* 500 U.S. 72, ——, 111 S.Ct. 1700, 1704, 114 L.Ed.2d 134 (1991) (quoting *Allen v. Wright,* 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984)), whether Howe and the class have standing depends on whether the statute at issue, Title IV–D, creates an express or implied private right of action. *Warth v. Seldin,* 422 U.S. 490, 500–01, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Here, the injury the class suffers, specifically denial of child support enforcement services, is directly traceable to the State's refusal to assist them in obtaining child support enforcement from the absent fathers living within Indian reservations and is capable of judicial redress. Therefore, their standing depends on whether Title IV–D confers a private right of action under section 1983 upon parties in their position.

■ As a general rule, plaintiffs may bring private causes of action under section 1983 for violations of federal statutes. *Maine v. Thiboutot,* 448 U.S. 1, 8, 100 S.Ct. 2502, 2506, 65 L.Ed.2d 555 (1980). However, a private right of action will not lie if Congress has not created any enforceable rights in the statute, *Pennhurst State School & Hosp. v. Halderman,* 451 U.S. 1, 24–25, 101 S.Ct. 1531, 1543–44, 67 L.Ed.2d 694 (1981), or if it intended to

---

4. Upon a Motion for Reconsideration and Request for Stay Pending Reconsideration by the federal government, the district court vacated its earlier order requiring both the federal and state governments to negotiate, and ordered the State

to "use every reasonable effort to negotiate a cooperative agreement or purchase of service agreement with each of the nine tribes in South Dakota." *Howe v. Ellenbecker,* 796 F.Supp. 1276, 1280 (D.S.D.1992).

foreclose private enforcement by providing a comprehensive remedial scheme in the statute itself, *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 14, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981). Recently, in *Suter v. Artist M.,* —— U.S. ——, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), the Supreme Court refined its analysis of private rights of action under section 1983, concluding that a section 1983 action is created where Congress intends the statute to benefit persons like the plaintiffs through the imposition of mandatory and direct obligations on the state, and where no comprehensive enforcement mechanism exists under which plaintiffs may find relief.[5] *Id.* —— U.S. at —— & n. 11, at 1366–68 & n. 11.

■ Our analysis for evaluating a federal law's enforceability under section 1983 begins by inquiring "whether the provision in question was intended to benefit the putative plaintiff." *Wilder,* 496 U.S. at 509. We agree with the district court that in enacting Title IV–D Congress intended to benefit AFDC families. First, Congress expressly provided in 42 U.S.C. § 651 that the purpose of Title IV–D is to "assur[e] that assistance in obtaining support will be available . . . to all children." Second, Congress' intent to benefit AFDC women and children with absent fathers is evident from the plain language of Title IV–D's requirements. For example, to meet the Act's minimum standards, a state must, *inter alia:* make Title IV–D services available to non-AFDC families, 42 U.S.C. § 657(c); give the first fifty dollars collected from each absent parent to the family without a corresponding reduction in their monthly AFDC payment, 42 U.S.C. § 657(b); and provide families with annual notice of the support collected on their behalf, 42 U.S.C. § 654(5). Third, the legislative history shows that Title IV–D was primarily designed to "help children attain this right [to support], including the right to have their fathers identified so that support can be obtained." S.Rep. No. 93–1356, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 8133, 8145–46. Finally, the decisions of other courts are consistent with our view that Title IV–D was intended to benefit needy families. *See Carelli v. Howser,* 923 F.2d 1208, 1211 (6th Cir.1991) (Title IV–D was intended to benefit both AFDC families and "the public fisc" by reducing public welfare); *Behunin v. Jefferson County Dep't of Social Servs.,* 744 F.Supp. 255, 257–58 (D.Colo.1990) (Congress primarily intended Title IV–D to secure support enforcement services for children and their families); *Beasley v. Harris,* 671 F.Supp. 911, 921 (D.Conn.1987) (Congress intended to enlarge the assistance to the family); *cf. Wehunt v. Ledbetter,* 875 F.2d 1558, 1565 (11th Cir.1989), *cert. denied,* 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 609 (1990) (Title IV–D was enacted to reduce welfare costs). We thus conclude that Congress enacted Title IV–D to benefit "putative plaintiffs" such as Howe and the class members.

■ Next, we must determine whether Congress set forth the intent to benefit these types of families in specific and mandatory terms in the provision at issue. *Suter,* —— U.S. at ——, 112 S.Ct. at 1370. To assert a

---

5. Before *Suter,* the Supreme Court developed a three-part framework for analyzing whether a plaintiff could enforce a federal law by bringing a § 1983 action. *See Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990). This inquiry examined (1) whether Congress intended the provision at issue to benefit the putative plaintiff, and if so, (2) whether it reflected merely a congressional preference or imposed binding obligations on a state or (3) whether the plaintiff's interest was so "vague and amorphous" that it is beyond the power of judicial enforcement. *Id.*

This Circuit, as well as others, has recognized that although *Suter* weakened earlier precedent in vital respects, the Court was careful not to explicitly overrule the *Wilder* framework. *See*

*Arkansas Medical Soc'y, Inc. v. Reynolds,* 6 F.3d 519, 524–525 (8th Cir.1993) ("*Suter* did not overrule *Wilder* "); *Stowell v. Ives,* 976 F.2d 65, 68 (1st Cir.1992); *Procopio v. Johnson,* 994 F.2d 325, 331 n. 9 (7th Cir.1993). Following the lead of the First and Seventh Circuits, we believe it "both prudent and possible to synthesize the teachings of *Suter* with the Court's prior precedents." *Stowell,* 976 F.2d at 68. Thus, we proceed by using the *Wilder* framework as articulated in *Suter.* However, we need not discuss in detail whether Howe and the class have "vague and amphorous" interests that are beyond the power of judicial enforcement because neither party disputes that the interests of obtaining child support are capable of redress through judicial decree.

section 1983 action, the statute at issue must give unambiguous notice to the State of what is expected of it, instead of "broad limits" in which to comply. *Suter,* —— U.S. at ——, 112 S.Ct. at 1368; *Arkansas Medical Soc'y,* 6 F.3d at 525 (discussing the *Suter* Court's emphasis on the fact that terms must be "unambiguously" conferred to be enforceable). Once a state decides to ·enter the AFDC program, the requirements of Title IV–D and its corresponding regulations are mandatory and unambiguous. For example, in addition to the mandatory requirements stated above, state plans "must provide that the State will undertake" a program to establish the paternity of a child born out of wedlock, 42 U.S.C. § 654(4), and the state "must" notify a family "at least annually" of the amount of child support collected on its behalf. 42 U.S.C. § 654(5). *See Behunin,* 744 F.Supp. at 258 (listing reasons Title IV–D is mandatory). A state may not receive federal funds for its AFDC program unless it has a Title IV–D child support recovery program that complies with federal law. 42 U.S.C. § 602(a)(27). Furthermore, the regulations reiterate the statute's plain directives, requiring that participating states *must* attempt to locate absent parents, 45 C.F.R. § 303.3(b); *must* periodically review and adjust child support orders, 45 C.F.R. § 303.4; *must* determine the paternity of children born out of wedlock, 45 C.F.R. § 303.5; and *must* enforce support obligations for the children, 45 C.F.R. § 303.6. The mandates of Title IV–D are particular and specific enough to impose binding obligations on South Dakota, and accordingly, create substantive enforceable rights in the class. *See Wilder,* 496 U.S. at 512, 110 S.Ct. at 2518–19 (holding that the Boren Amendment of the Medicaid Act creates substantive federal rights enforceable under section 1983 because that Act actually required the states to adopt "reasonable and adequate rates" for medical assistance); *cf. Suter,* —— U.S. at ——, 112 S.Ct. at 1370 (holding that the Adoption Assistance and Child Welfare Act of 1980 does not create a private enforceable right under section 1983 because Act only required states to make "reasonable efforts").

■ Finally, even though the class falls within the parameters of intended beneficiaries and Title IV–D imposes mandatory requirements, we must conclude that the statute itself does not provide a "comprehensive remedial scheme which leaves no room for additional private remedies" in order to hold that Title IV–D confers an enforceable right on Howe and the class members to sue under section 1983. *Suter,* —— U.S. at —— & n. 11, 112 S.Ct. at 1368 & n. 11. Title IV–D does contain an enforcement scheme in the form of fiscal sanctions the federal government may assert against the State, but these remedial measures are neither comprehensive nor available to the class. The federal government's authority to audit and impose monetary sanctions does not constitute "comprehensive" remedies. *See Wright v. City of Roanoke Redevelopment and Housing Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987) (finding a federal agency's authority to audit and withhold federal funds insufficient to show Congress' intent to preclude section 1983 actions). Furthermore, Howe and the class have no alternative enforcement remedy because the State has continuously refused to assist them in obtaining Title IV–D services to which they are entitled. We see no enforcement provisions in Title IV–D that show a congressional intent to foreclose these Indian women and children from asserting private remedies. We cannot believe that in enacting Title IV–D Congress intended to deny child support enforcement services and paternity determination for a such a large segment of the South Dakota population.

■ Our analysis under *Wilder* and *Suter* leads us to the conclusion that the Howe class may assert their claims under section 1983.

We affirm the judgment of the district court.