Cramer et al., Appellees, v. Petrie, Appellant.

[Cite as Cramer v. Petrie (1994),     Ohio St.3d    .]

Domestic relations -- Child support -- Order to pay child support may be enforced by means of imprisonment through contempt proceedings even after the child who is the subject of the order is emancipated.

An obligation to pay child support is not a "debt" within the meaning of that term in Section 15, Article I of the Ohio Constitution.  Because this obligation does not fall within the scope of Section 15, Article I, an order to pay child support may be enforced by means of imprisonment through contempt proceedings even after the child who is the subject of the order is emancipated.

(No. 93-1102 -- Submitted April 27, 1994 -- Decided August 31, 1994.)

Certified by the Court of Appeals for Hancock County, No. 5-92-47.

Sandra M. Cramer, appellee, and James R. Petrie, Sr., appellant, were granted a divorce by the Hancock County Court of Common Pleas on July 10, 1974.  The court awarded Cramer custody of the only child born of their marriage.  The child, James R. Petrie, Jr., was born May 3, 1973.  The court ordered Petrie to pay child support of twenty dollars per week, plus poundage.

In the years after the divorce, Petrie consistently failed to pay child support despite repeated attempts to recover payments from him.  The court issued numerous orders directing him to show cause why he should not be held in contempt for failing to obey the court's orders to pay child support.  At times the court issued order to Petrie's employers directing them to withhold the support payments from Petrie's pay.  On at least one occasion the court ordered Petrie to voluntarily execute an agreement to deduct the support payments from his unemployment compensation during periods of unemployment.  Nevertheless, by August 1989, Petrie was in arrears to the extent of $9,795.78.

On August 5, 1991, the Hancock County Child Support Enforcement Agency (the "agency") filed a motion on behalf of Cramer seeking, among other relief, an order adjudging Petrie in contempt of court for failing to obey the court's July 10, 1974 order.  The parties did not appear before the court but instead agreed to the following course of action: (1) Petrie would seek employment (after being unemployed during the entire year 1991) and report to the agency each Friday on his progress; (2) Petrie would execute a wage assignment as appropriate and pay child support in the amount of twenty dollars per week, plus poundage; and (3) a hearing would be set in ninety days to review Petrie's employment progress.

The hearing was held on January 7, 1992.  By this time Petrie's son had reached the age of majority.  See R.C. 3109.01 (persons of the age of eighteen years or more "are of full age for all purposes").  Following the hearing, the court of common pleas found Petrie to be in contempt of court for failing to make child support payments as previously ordered (including failing to make any payments since Petrie's earlier agreement to do so).  As a result, the court sentenced Petrie to a term of sixty days in the Hancock County Justice Center, with fifty

of the days suspended.

Petrie appealed on the grounds that the court of common pleas had no authority to hold contempt hearings after the emancipation of his son. Petrie claimed that imposing a jail sentence for unpaid support for a child who was emancipated amounted to imprisonment for a debt, which is contrary to Section 15, Article I of the Ohio Constitution.

The court of appeals affirmed the decision of the court of common pleas.

The court of appeals, finding its decision to be in conflict with the judgment of the Court of Appeals for the Twelfth District in Clermont County in Thompson v. Albers (1981), 1 Ohio App.3d 139, 1 OBR 446, 439 N.E.2d 955, and the Court of Appeals for the Tenth District in Franklin County in Bauer v. Bauer (1987), 39 Ohio App.3d 39, 528 N.E.2d 964; Crigger v. Crigger (1991), 71 Ohio App.3d 410, 594 N.E.2d 67; and Martin v. Martin (1992), 76 Ohio App.3d 638, 602 N.E.2d 772, certified the record of this case to this court for review and final determination.

Sandra M. Cramer, pro se.

John A. Kissh, Jr., for appellee Hancock County Child Support Enforcement Agency.

Firmin, Sprague & Huffman Co., L.P.A., and Thomas P. Kemp, for appellant.

Lee Fisher, Attorney General, and Karen Lazorishak, Assistant Attorney General, urging affirmance for amici curiae, state of Ohio and Ohio Department of Human Services.

Michael Patterson, urging affirmance for amicus curiae, Ohio Human Services Directors' Association.

Kimberly C. Newsom, urging affirmance for amicus curiae, Ohio CSEA Directors' Association.

Wright, J., The sole issue in this case is whether a court may hold a parent in contempt and impose a jail sentence for the parent's failure to comply with an order to pay child support when the child who is the subject of the order is emancipated. We hold that a court may use its contempt powers in such a manner even if the child is emancipated. Accordingly, we affirm the decision of the court of appeals.

Appellant notes that when a child is emancipated, a parent's legal obligation to support that child ends. See R.C. 3103.03. Appellant argues that when a parent's obligation to support a child no longer exists, a court may not use contempt proceedings to enforce an order directing the parent to pay child support. In this respect, appellant's argument concerns the court's jurisdiction to hold contempt proceedings.

We hold that a court has jurisdiction to hold contempt proceedings in such a situation for the reasons that follow. First, courts have inherent authority -- authority that has existed since the very beginning of the common law -- to compel obedience of their lawfully issued orders. Indeed, the phrase "contemptus curiae" has been a part of English law since the Twelfth Century. See Borrie & Lowe's Law of Contempt (2 Ed.1983) 1. Fundamentally, the law of contempt is intended to uphold and ensure the effective administration of justice. Of equal importance is the need to secure the dignity of the court

and to affirm the supremacy of law.1  For these reasons, a court's order must be obeyed.  Accordingly, when a court finds that a father is legally obligated to pay an amount for child support and issues an order directing the father to do so, the father must either pay the amount due or show cause why he cannot.  The father cannot -- as appellant has apparently done -- ignore the court's order and follow his own convictions.

Furthermore, we see no reason why a court's inherent authority to enforce a lawfully issued child support order must end when the child is emancipated.  More is at stake than the mere nonpayment of support.  Also at stake is the court's strong interest in seeing, as a general matter, that its orders are not disobeyed with impunity.  This interest exists independently of the child who is the subject of the order because it concerns the exercise of the court's judicial functions and ultimately the public's confidence in the judicial system.

Second, aside from a court's inherent authority to hold contempt proceedings, the General Assembly has expressly granted courts jurisdiction to hold contempt proceedings after the obligation to support a child has ended.  R.C. 2705.031 provides:

"(B)(1) Any party who has a legal claim to any support ordered for a child, spouse, or former spouse may initiate a contempt action for failure to pay the support.

"***

"(E) *** The court shall have jurisdiction to make a finding of contempt for the failure to pay support and to impose the penalties set forth in section 2705.05 of the Revised Code in all cases in which past due support is at issue even if the duty to pay support has terminated ***."  (Emphasis added.)

In addition, R.C. 3113.21(M)(1) provides:

"The termination of a support obligation or a support order does not abate the power of any court to collect overdue and unpaid support or to punish any person for a failure to comply with an order of the court or to pay any support as ordered in the terminated support order."

It is certainly not surprising that the General Assembly has codified a court's authority to enforce orders to pay child support even after the child is emancipated.  The state has a strong interest in improving the enforcement of child support because the public fisc is at stake.  Ohio has elected to participate in the Aid for Dependent Children ("ADC") program established by Title IV-A of the Social Security Act, Section 601 et seq., Title 42, U.S. Code.  As a condition to receiving federal funding for ADC, the state is obligated to obtain and enforce child support orders against noncustodial parents.

In 1975, Congress removed the child support program from Title IV-A and created a separate child support program in Title IV-D of the Social Security Act.  Section 651 et seq., Title 42, U.S. Code (88 Stat. 2351).  Title IV-D allows states, including Ohio, to receive federal financial assistance if they operate efficient and cost-effective child support enforcement programs.  Ohio is periodically audited by the Secretary of the United States Department of Health and Human Services to determine whether it has complied with the numerous

requirements of Title IV-D, requirements that have as their goal the enforcement of child support orders. If the audit reveals that Ohio has not met the federal requirements, federal financial assistance is decreased, thereby indirectly increasing the state's financial burden.

In addition, Ohio has a direct financial interest in the enforcement of child support orders. Families receiving ADC are required to assign their interests in child support to the state. Section 602(a)(26)(A), Title 42, U.S. Code, and R.C. 5107.07. Such families receive the first fifty dollars in current support payments collected each month, and the state keeps the remainder as reimbursement for the ADC payments the family receives. See R.C. 5107.07(B). In addition, payments on child support arrearage are used in their entirety to compensate the state for the ADC payments made to the family. Section 654(5), Title 42, U.S. Code, R.C. 5107.07(B)(3), and Ohio Adm. Code 5101:1-3-013. Of course, families that have not received ADC payments are entitled to the entire amount of support collected by the state. See Carelli v. Howser (C.A.6, 1991), 923 F.2d 1208, 1210.

Thus, the state has a strong interest in ensuring the enforcement of child support obligations. If a court's contempt power ended upon the child's emancipation, a recalcitrant parent would have a strong incentive to withhold payment entirely because of the increased difficulty in enforcing the child support order when the threat of imprisonment for contempt has been removed. Such a result would certainly contravene the state's interest in the aggressive enforcement of child support orders.

We are mindful, however, that the enforcement of child support orders -- no matter how compelling enforcement might be -- must not deny noncustodial parents their rights under the Ohio Constitution. Thus, we turn to the second issue in this case.

Appellant argues that the use of a court's contempt power to imprison a parent after the emancipation of the child to whom support is owed violates the state constitutional prohibition against imprisonment for a debt. Section 15, Article I of the Ohio Constitution provides: "No person shall be imprisoned for debt in any civil action, on mesne or final process, unless in cases of fraud." The question before us, then, is whether child support in arrears after the emancipation of the child is a "debt" within the meaning of that term in Section 15, Article I of the Ohio Constitution.

We do not view an obligation to pay child support as such a debt. An obligation to pay child support arises by operation of law and is a personal duty owed to the former spouse, the child, and society in general.2 It does not arise out of any business transaction or contractual agreement, as does an ordinary debt. Thus, we have consistently held that support obligations are not debts in the ordinary sense of that word.

For example, in a bankruptcy case arising under federal law, we held that an order for the maintenance of an illegitimate child is not a debt and thus may not be discharged in bankruptcy. Hawes v. Cooksey (1844), 13 Ohio 242. "The payment of money, compelled by the statute, for the support of illegitimate children, is an enforcement of moral duty

resulting from a wrongful act of the person charged.  Not in the nature of a debt owing, or due on contract. *** The money *** to be paid and secured, is not a debt due to the mother, or other person, but only a mere charge of maintenance."  Id. at 244-245.

Employing similar reasoning, we have specifically held in previous cases that support obligations are not "debts" within the meaning of that word in Section 15, Article I of the Ohio Constitution.  In our earliest case addressing the issue, we held that a decree for alimony is not a debt within the purview of that provision of the Constitution.  State ex rel. Cook v. Cook (1902), 66 Ohio St. 566, 64 N.E. 567.  The obligation to pay alimony "arises from a duty which the husband owes as well to the public as to the wife," and, as such, "it is not a debt in the sense of a pecuniary obligation ***."  Id. at 572, 64 N.E. at 568.  Later, we held that a statute providing for the imprisonment of a father until he complies with an order to pay for the "support, maintenance and necessary expenses, caused by pregnancy and childbirth" does not violate Section 15, Article I of the Ohio Constitution.  Belding v. State ex rel. Heifner (1929), 121 Ohio St. 393, 8 Ohio Law Abs. 28, 169 N.E. 301. And, most recently, we held that the provisions in a separation agreement relating to the division of property do not constitute the type of debt for which imprisonment is prohibited.  Harris v. Harris (1979), 58 Ohio St.2d 303, 12 O.O.3d 291, 390 N.E.2d 789.

We see no reason to depart from these established precedents which hold that support obligations arising by operation of law and moral duty do not come within the scope of the prohibition against imprisonment.  Accordingly, we hold that an obligation to pay child support is not a "debt" within the meaning of that term in Section 15, Article I of the Ohio Constitution.  Because this obligation does not fall within the scope of Section 15, Article I, an order to pay child support may be enforced by means of imprisonment through contempt proceedings even after the child who is the subject of the order is emancipated.

For the foregoing reasons, the decision of the court of appeals is affirmed.

                                        Judgment affirmed.

Moyer, C.J., A.W. Sweeney, Douglas, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.

FOOTNOTES:

1  On this last point, Chief Justice M'Kean of the Supreme Court of Pennsylvania responded to a defendant who refused to answer interrogatories as follows: "Since, however, the question seems to resolve itself into this, whether you shall bend to the law, or the law shall bend to you, it is our duty to determine that the former shall be the case."  Respublica v. Oswald (1788), 1 U.S. (Dall.) 319, 329, 1 L.Ed. 155, 160.

2  The duty to support one's spouse and child is codified in R.C. 3103.03, which provides in part:

"(A) Each married person must support himself or herself and his or her spouse out of his or her property or by his or her labor.  If a married person is unable to do so, the spouse of the married person must assist in the support so far as the spouse is able.  The biological or adoptive parent of a minor

child must support his or her minor children out of his or her property or by his or her labor.

"(B) Notwithstanding section 3109.01 of the Revised Code, the parental duty of support to children, including the duty of a parent to pay support pursuant to a child support order, shall continue beyond the age of majority as long as the child continuously attends on a full-time basis any recognized and accredited high school.  That duty of support shall continue during seasonal vacation periods."