OPINION
Appellant, C. Jane Gonzales, appeals from the judgment of the Lake County Court of Common Pleas, Domestic Relations Division.
On November 29, 1990, appellant and appellee, John Gonzales, filed a petition for dissolution of marriage requesting the court to approve the separation agreement attached to their petition. The parties' separation agreement, which was incorporated into the dissolution decree granted by the trial court on February 8, 1991, included the following provisions for spousal support:
"IV. Alimony
 "A. Husband agrees to pay to the Wife sustenance alimony * * * in the amount of $100,000.00 per year, guaranteed ($500,000.00) for a period of 5 years effective September 1, 1990. Said alimony shall be paid in equal monthly installments of $4,531.80, and Husband shall pay the remainder of the alimony at such time as he receives his yearly Lincoln Electric bonus.
* * *
 "Husband further agrees that he shall continue to pay alimony in the sum of $100,000 per year for as long a period after 5 years as he continues to work in the same or similar capacity with approximately the same income or more than he is presently earning. Any retirement benefits received by the Wife under her Qualified Domestic Relations Order from Husband's Retirement Plan during the first five years shall be counted towards Husband's $100,000.00 alimony obligation.
 "B. If the Husband is retired at any time after September 1, 1995 through August 31, 2000, he agrees to pay to the wife as and for alimony the sum of one-half of his gross income and deferred income, and retirement income, from all sources, not to exceed $100,000.00 per year. It is agreed that any obligation of Husband payable to Wife shall include any Q.D.R.O. payments made to the Wife. This paragraph, section IV(B) is intended to apply only to the period of years 6 through 10 from the date of execution.
 "Husband's obligation to pay Wife one-half of his income from all sources under this Section (B) shall include the gross benefits received under the Lincoln Electric Company Retirement Annuity Program. However, Husband's obligation to pay Wife 50% yearly of the gross Lincoln Electric Retirement Annuity shall be reduced by any amount received by Wife under any Q.D.R.O. yearly."
In the dissolution decree, the trial court did not reserve jurisdiction to modify spousal support.
On August 28, 1995, appellee filed a motion to modify spousal support, arguing that he was unable to pay spousal support as outlined in the parties' separation agreement due to a change in circumstances. On December 29, 1995, appellee filed a motion for relief from judgment, or in the alternative, a motion to clarify the February 8, 1991 dissolution decree. In his motion, appellee argued that because he was forced to retire from Lincoln Electric on November 15, 1994 and suffered a heart attack in the spring of 1995, it was now impossible and inequitable for him to continue to pay spousal support to appellant. On March 1, 1996, appellee filed a motion to dismiss his motion for relief from judgment and asked the trial court to consolidate his motion to modify spousal support with his motion to clarify the dissolution decree.
On May 20, 21, 22, and 23, 1996, the trial court held hearings on various motions pending before it, including appellee's motion to modify spousal support and motion to clarify the dissolution decree. At the hearings, appellee argued that he did not know what was included within the definition of "gross income" as set forth in Section IV(B) of the parties' separation agreement. On May 24, 1996, the trial court denied appellee's motion to modify spousal support; however, on August 20, 1996, the trial court granted his motion to clarify the dissolution decree with respect to its provisions for spousal support. In its judgment, the trial court made the following conclusions of law with regard to appellee's spousal support obligation:
 "H. The Court concludes neither party considered including any social security benefits the husband received subsequent to the dissolution of marriage to be included as income for spousal support purposes and that was the intent of the parties at the time they signed the separation agreement.
 "I. The Court concludes the parties intended under section B of the separation agreement using the ordinary meaning of the words contained in their separation agreement to include for spousal support purposes all gross income declared by the husband on his tax returns from any and all sources. * * * To resolve the confusion and ambiguity outstanding in at least one of the litigants' minds, the Court concludes it was the parties' intention to use as a definition of income for spousal support purposes the IRS code. Thus, whatever income must be declared on husband's tax returns for IRS purposes will be considered for spousal support purposes in the case at bar, and further any exclusions which IRS allows the husband to deduct on his income tax returns from income for tax purposes shall equally apply."
Based upon the above conclusions of law, the trial court made the following order:
 "For alimony, (now known as spousal support), purposes the husband's gross income from all sources shall include all income he declares on his tax returns for IRS purposes, and shall exclude those sums which IRS allows him to exclude from his tax returns for tax purposes, provided however, Social Security benefits received by the husband subsequent to the dissolution will not be included for income purposes in determining husband's obligation to the wife for spousal support since this benefit was not contemplated by the parties as an income source when they signed their separation agreement."
Approximately two weeks after receiving the August 20, 1996 judgment from the trial court, appellee transferred assets held in certificates of deposit to his current wife, Charlotte Gonzales. The sum total of the certificates of deposit was approximately $300,000 and came from a settlement that appellee had entered into with Lincoln Electric after his forced retirement.
On March 26, 1997, appellant filed a motion to add Charlotte Gonzales as a new party defendant pursuant to Civ.R. 75(B)(1). On March 27, 1997, appellant filed a motion to show cause why appellee should not be held in contempt of the court's orders of February 8, 1991 and August 20, 1996 for failing to pay the correct amount of spousal support and fraudulently transferring assets to avoid paying spousal support; a motion to modify and/or clarify the judgment of August 20, 1996 to define "gross income" as it is defined in R.C. 3112.215(a); and a motion for attorney's fees.
On September 15, 1997, appellant filed a motion to find that appellee had fraudulently transferred assets to avoid his spousal support obligation. On March 9, 1998, appellant filed a motion to vacate the trial court's judgment filed on August 20, 1996, arguing that it was voidab initio because the trial court had no subject matter jurisdiction to modify the parties' separation agreement.
The trial court denied appellant's motion to add a new party defendant on December 31, 1997. On December 14, 15, and 16, 1998, the trial court held hearings on all of the motions pending before it. The trial court entered the following order with respect to the motions filed by appellant:
 "A. Wife's Motion to Show Cause filed 3/26/97, is well taken. Husband is in contempt of the court's prior orders to pay spousal support for the fiscal year 9/1/95-8/31/96, pursuant to the court's orders. * * *
* * *
 "C. Wife's Motions to Clarify and Modify filed 3/26/98, her Motions filed 9/15/97, for Restraining Order and Transfer, and her Motions filed 3/9/98 to Vacate, are overruled."
From this judgment, appellant assigns the following errors:
 "[1.] The trial court erred in modifying the non-modifiable terms and intent of the parties' spousal support agreement by characterizing its order as a `clarification.'
 "[2.] The trial court erred in denying appellant's motion to vacate its August 20, 1996 journal entry as the court lacked subject matter jurisdiction.
 "[3.] The trial court erred by failing to find appellee in contempt of the court's order by fraudulently transferring assets to his current wife to avoid paying his spousal support debt.
 "[4.] The trial court abused its discretion in denying appellant's motion to add new party defendant under Civil Rule 75(B)(1).
 "[5.] The trial court erred in denying appellant full attorney fees and granting appellee attorney fees."
Appellant's first and second assignments of error will be addressed together because they are interrelated. In her first two assignments of error, appellant alleges that the trial court modified appellee's spousal support obligation in the August 20, 1996 judgment entry and that judgment is void because the court had no jurisdiction to modify spousal support. Appellant contends that the trial court improperly modified the provisions of appellee's spousal support obligation by "clarifying" the unambiguous term "gross income."
R.C. 3105.18 governs a trial court's jurisdiction over spousal support and provides in part:
 "(E) * * * The Court that enters the decree of divorce or dissolution of marriage does not have jurisdiction to modify the amount or terms of the alimony or spousal support unless the Court determines that the circumstances of either party have changed and unless one of the following applies:
 "(2) In the case of a dissolution of marriage, the separation agreement that is approved by the court and incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support."
The trial court had no jurisdiction to modify the terms of the parties' separation agreement because the decree of dissolution does not contain a provision specifically authorizing the trial court to modify the terms of appellee's spousal support obligation. While a trial court may not modify the terms of the spousal support arrangement unless it reserves jurisdiction in the dissolution decree, a trial court may interpret an ambiguous clause by considering the intent of the parties and the equities involved. In re Dissolution of Marriage of Seders (1987),42 Ohio App.3d 155, 156, 536 N.E.2d 1190.
A separation agreement is a contract and is subject to the same rules of construction governing the interpretation of other contracts. Uram v.Uram (1989), 65 Ohio App.3d 96, 99, 582 N.E.2d 1060. "* * * [I]t has been held that when a term in an agreement is unambiguous, then the words must be given their plain, ordinary and common meaning; however, when the term is not clear, parole evidence is admissible to explain the meaning of the words." Forstner v. Forstner (1990), 68 Ohio App.3d 367, 372,588 N.E.2d 285.
In the instant case, the trial court considered the intent of the parties at the time they entered into the separation agreement to interpret the term "gross income." In its judgment, the trial court states that it looked to the intent of the parties in order to clarify the confusion in "at least one of the litigants' minds"; however, the trial court did not specifically determine that the term "gross income" was ambiguous before it considered the parties' intent. The clause in the parties' separation agreement at issue provides: "* * * [Husband] agrees to pay to the wife as and for alimony the sum of one-half of his gross income and deferred income, and retirement income, from all sources, not to exceed $100,000.00 per year." Giving the words in this provision their plain, ordinary, and common meaning, we cannot conclude that this clause is ambiguous. This clause unambiguously states that appellee will pay as spousal support one-half of his gross income from all sources; it does not limit "gross income" to income reported on appellee's tax return or exclude income derived from appellee's social security benefits. The trial court improperly modified the term "gross income" from its initial definition of income "from all sources" to income "[appellee] declares on his tax returns for IRS purposes," except for his social security benefits.
Because the trial court had no jurisdiction to modify the terms of appellee's spousal support obligation, the portion of the August 20, 1996 judgment that constitutes a modification is void and must be considered a nullity. See Patton v. Diemer (1988), 35 Ohio St.3d 68, 518 N.E.2d 941, at paragraph three of the syllabus. Appellant's first and second assignments of error have merit.
In her third assignment of error, appellant alleges that the trial court erred by refusing to hold appellee in contempt for fraudulently transferring assets to his current wife. Appellant contends that appellee's transfer of assets to Charlotte Gonzales constitutes a fraudulent transfer under Chapter 1336 of the Revised Code. Appellant asserts that appellee, by transferring the certificates of deposit to Charlotte, purposely defeated her claim to half of the interest income that the transferred assets were earning.
As an initial matter, we cannot conclude that appellee, who has an obligation to pay spousal support to appellant, can be classified as a debtor within the scope of R.C. Chapter 1336. R.C. 1336.04(A) defines fraudulent transfer as:
 "A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
 "(1) With actual intent to hinder, delay, or defraud any creditor of the debtor; * * *"
In Cramer v. Petrie (1994), 70 Ohio St.3d 131, 637 N.E.2d 882, the Supreme Court of Ohio noted that "the obligation to pay alimony `arises from a duty which the husband owes as well to the public as to the wife,' and, as such, `it is not a debt in the sense of a pecuniary obligation * * *.'" Id. at 136, quoting State ex rel. Cook v. Cook (1902),66 Ohio St. 566, 64 N.E.2d 567. In Cramer, the Court held that because an obligation to pay child support is not a "debt" within the meaning of Section 15, Article 1 of the Ohio Constitution, which prohibits imprisonment for debt, an order to pay child support may be enforced by means of imprisonment through contempt proceedings. Id. at syllabus. An obligation to pay spousal support is different from a debt arising from a business transaction; therefore, in the absence of case law supporting appellant's contention that appellee is a debtor under R.C. Chapter 1336, we will not apply Ohio's fraudulent transfer statute to this case.
Although we do not believe Ohio's fraudulent transfer statute applies to this case, we will determine whether the trial court erred by refusing to hold appellee in contempt for transferring the certificates of deposit at issue to his current wife. A reviewing court cannot reverse a lower court's determination in a contempt proceeding in the absence of a showing of an abuse of discretion. State ex rel Celebrezze v. Gibbs
(1991), 60 Ohio St.3d 69, 573 N.E.2d 62; Burke v. Burke (May 14, 1999), Geauga App. No. 98-G-2163, unreported. We will not reverse the judgment unless we determine that the trial court abused its discretion by refusing to hold appellee in contempt. An abuse of discretion is more than a mere error of law; "it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
Under of the terms of Section IV of the parties' separation agreement, appellee agreed to pay spousal support to appellant in the amount of $100,000 per year for five years after the dissolution of marriage and one-half of his gross income from all sources for the second five years. Appellant claims that she is entitled to half of the interest income generated by the certificates of deposit during the second five-year period, which commenced September 1, 1995, and that appellee may not transfer the assets out of his name to avoid paying her half of the interest income. We disagree.
Pursuant to the terms of the separation agreement, appellant had an entitlement to half of the interest earned on the certificates of deposit while they were in appellee's name; however, no provision of the separation agreement precluded appellee from transferring his interest-bearing assets to his current wife to avoid appellant's claim to the interest income. On July 1, 1995, appellee received the $300,000 that he placed into certificates of deposit from his settlement with Lincoln Electric, which was before the commencement of the second five-year period of appellee's spousal support obligation set forth in the separation agreement. Because appellee received the $300,000 during the first five-year period of the spousal support obligation and he satisfied his support obligation for the year prior to September 1, 1995, he was free to spend that income in whatever way he pleased and appellant had no claim to it.
We cannot conclude that the trial court abused its discretion by refusing to hold appellee in contempt for transferring assets to which appellant had no entitlement, even though that transfer had the effect of decreasing the amount of spousal support that appellant was able to collect. Appellant's third assignment of error has no merit.
In her fourth assignment of error, appellant alleges that the trial court abused its discretion by denying her motion to add a new party defendant pursuant to Civ.R. 75(B)(1). Appellant contends that Charlotte Gonzales should be joined as a party defendant because she has possession of assets from which appellant seeks an award of spousal support.
Civ.R. 75(B)(1) provides:
 "Civ.R. 14, 19, 19.1, and 24 shall not apply in divorce, annulment, or legal separation actions. However:
 "(1) A person or corporation having possession of, control of, or claiming an interest in property, whether real, personal, or mixed, out of which another seeks an award of spousal support or other support, may be made a party defendant."
Having determined that appellant has no entitlement to the assets transferred to Charlotte or the interest income generated from those assets, we cannot conclude that the trial court erred by refusing to join Charlotte as a new party defendant. Appellant's fourth assignment of error has no merit.
In her fifth assignment of error, appellant alleges that the trial court erred by denying appellant full attorney's fees and granting appellee attorney's fees. Appellant contends that she is entitled to attorney's fees associated with appellee's failure to pay spousal support and for the following motions: (1) to add a new party defendant; (2) to show cause; (3) to find that appellee's fraudulently transferred assets; and to vacate the August 20, 1996 judgment. Appellant also contends that the trial court abused its discretion by awarding appellee attorney's fees of $6,017.50.
R.C. 3105.18(G) and (H) apply to the award of attorney's fees in domestic relations cases and provide in part:
 "(G) * * * [If] any person required to pay spousal support under an order made or modified by a court on or after January 1, 1991, is found in contempt of court for failure to make alimony or spousal support payments under the order, the court that makes the finding, in addition to any other penalty or remedy imposed, shall assess all court costs arising out of the contempt proceeding against the person and shall require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt.
 "(H) In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees."
Upon reviewing the trial court's award of attorney's fees to appellant, we cannot conclude that the court abused its discretion by awarding fees in the amount of $3,397.75. Pursuant to R.C. 3105.18(G), the trial court awarded appellant all fees associated with "discovery issues and/or the show cause for failure to pay spousal support."
We will now address whether the trial court abused its discretion by awarding attorney's fees in the amount of $6,017.50 to appellee. An award of fees is not an abuse of discretion when the court determines that the other party has the ability to pay the fees awarded by the court and the party seeking fees demonstrates the reasonableness of those fees. Shafferv. Shaffer (1996), 109 Ohio App.3d 205, 214, 671 N.E.2d 1317. In the instant case, the record demonstrates that the trial court determined that appellant had the ability to pay the fees awarded by the court and those fees were reasonable; therefore we cannot conclude that the trial court abused its discretion in awarding attorney's fees to appellee.
Based upon the trial court's disposition of the motions pending before it, the trial court did not abuse its discretion in its award of attorney's fees to the parties; however, we remand this case to the trial court so that it can redetermine its award of attorney's fees to both parties in accordance with the conclusion reached in this opinion that the trial court erred by denying appellant's motion to vacate the August 20, 1996 judgment. Appellant's fifth assignment of error has merit.
For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is reversed as to appellant's first and second assignment of error; affirmed as to appellant's third and fourth assignments of error; and reversed and remanded as to appellant's fifth assignment of error.
 ______________________________ NADER, J.
FORD, P.J., concurs, CHRISTLEY, J., dissents with Dissenting Opinion.