[Cite as *In re Z.M.*, 2019-Ohio-1192.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | CASE NO. CA2018-04-070 |
| Z.M. | : | O P I N I O N<br>4/1/2019 |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JS2014-0606

Markisha D. Brown, appellee, pro se

William Martin, appellant, pro se

**M. POWELL, J.**

{¶ 1} Appellant ("Father") appeals, pro se, from a decision of the Butler County Court of Common Pleas, Juvenile Division, denying his motion for relief from judgment regarding his child support obligation.

{¶ 2} Appellee ("Mother") is the parent of an eight-year-old child. The record suggests that the parties were never married. Father testified he signed an acknowledgment of paternity at the hospital at the time of the child's birth. Mother's brief indicates that due to Father's "reluctance to voluntarily assist financially with [the] child's needs" and his failure to pay the amount of child support he promised to pay, she "requested

assistance through the child support enforcement agency."

{¶ 3} On July 1, 2014, four years after the child's birth, the Butler County Child Support Enforcement Agency ("CSEA") issued an administrative order finding that Father was the child's parent and ordering him to pay $476.07 per month in child support. The original administrative order provided that Father "has a duty of support for said child based on either a final Acknowledgment of Paternity Affidavit filed with the Central Paternity Registry, a presumption of paternity pursuant to [R.C.] 3111.03, or an administrative paternity determination by the BUTLER County CSEA." Father filed a complaint in the juvenile court challenging the administrative order regarding child support.

{¶ 4} On August 7, 2014, following a hearing on Father's complaint, a juvenile court magistrate sustained Father's objection to the administrative order. Based upon an attached child support worksheet reviewed, agreed to, and signed by both parties, the magistrate ordered Father to pay $443.59 per month in child support. Father did not file objections to the magistrate's decision and the decision was adopted by the juvenile court.

{¶ 5} In 2016, upon conducting an administrative adjustment review of Father's child support obligation, the CSEA recommended that the monthly child support obligation be increased to $534.99. Father moved for an administrative adjustment hearing, claiming that the child support amount was excessive given the "time [he spends] with the child." Upon conducting a hearing, the magistrate found that the daycare costs used to calculate the administrative child support order were incorrect, granted Father's "request for judicial mistake of fact order," and ordered that he pay $491.70 per month in child support. The juvenile court subsequently adopted the magistrate's decision.

{¶ 6} Subsequently, Father filed a contempt motion against Mother, seeking to decrease or terminate his child support obligation on the grounds he provided insurance and clothes for the child and had the child 12 days each month. In turn, Mother moved the

juvenile court to find Father in contempt for failing to pay the required monthly child support obligation. During a hearing on the motions, Father stipulated he had not paid child support as ordered. Consequently, the juvenile court granted Mother's contempt motion and dismissed Father's contempt motion.

{¶ 7} In July 2017, Father moved to set aside the prior administrative and juvenile court's child support orders. Father argued that all prior administrative child support orders, and consequently the juvenile court's child support orders, were void on the basis of Coram Non Judice because the administrative orders were issued by a biased hearing officer with a pecuniary interest in the final outcome of the support hearings under Title IV-D of the Social Security Act, and because the child support orders were not issued by a judge. Father further argued that the void judgments were improperly used to seize his monetary property in violation of the Fourteenth Amendment to the United States Constitution. Finally, Father argued that the child support order was created under the false premise that child support enforcement is mandatory. Father filed his motion pursuant to Fed.R.Civ.P. 60(b)(4).

{¶ 8} The magistrate conducted a hearing on Father's motion in 2018. In addition to the arguments he made in his motion, Father further alleged he was defrauded when he signed the acknowledgment of paternity at the time of the child's birth because he was not advised of the legal consequences. Father alternatively characterized the acknowledgment of paternity and the administrative child support orders as contracts. Father admitted his paternity for the child, testified that he signed the acknowledgment of paternity, and confirmed he was not contesting paternity. Conversely, Father tried to plead the Fifth Amendment as to whether he was the child's father and asserted he could not be ordered to pay child support if paternity was never established.

{¶ 9} On February 27, 2018, the magistrate overruled Father's motion to set aside

the child support orders. The magistrate noted that Father never attempted to rescind the acknowledgment of paternity as required by statute and never raised any of the foregoing issues when he successfully objected to the CSEA's 2016 administrative order and requested an administrative adjustment hearing on the ground the child support amount was excessive. Father filed an objection to the magistrate's decision. On March 7, 2018, the juvenile court overruled Father's objection and adopted the magistrate's decision.

{¶ 10} Father now appeals, raising one assignment of error:

{¶ 11} THE TRIAL COURT ERRED BY FAILING TO GRANT APPELLANT'S MOTION TO SET ASIDE THE JUDGMENT AS BEING VOID.

{¶ 12} Father argues that the original administrative child support order, and consequently all subsequent administrative orders and juvenile court orders imposing child support, are void because they stem from an elaborate fraud scheme under Title IV-D. That is, because a hearing officer's salary is paid partially or wholly from federal funds received from the department of health and human services in exchange for state agencies to establish and enforce child support orders under Title IV-D, the original administrative order was "created" by a hearing officer who had a pecuniary interest in the outcome of the case and was therefore neither impartial nor unbiased. Father further argues that because "the custodial parent receiving assistance is required to cooperate and assign rights for support or will lose benefits," such parent is compelled to or might offer false information in order to keep the benefits, thereby tainting the establishment of paternity. Finally, Father asserts that paying child support is voluntary.[1]

---

1. In his reply brief, Father further challenges the validity of his child support obligation, arguing that it was improperly set up by a hearing officer who does not have an oath of office, the hearing officer failed to explain the rights and responsibilities of acknowledging paternity, and the income withholding order created by the CSEA improperly takes his monetary property without a warrant. It is well-established that a reply brief may only be used to respond to, or rebut, the appellee's brief, and may not be used to raise new assignments of error or new issues for review. *Everbank Mtge. Co. v. Sparks*, 12th Dist. Warren No. CA2011-03-021, 2012-

{¶ 13} Father filed his motion to set aside void judgment under Fed.R.Civ.P. 60(b)(4) which allows relief from a final judgment or order if "the judgment is void."  However, the Federal Rules of Civil Procedure are neither applicable nor binding here.  *See In re Anisha N.*, 6th Dist. Lucas No. L-02-1370, 2003-Ohio-2356.

{¶ 14} To prevail on a motion brought under Civ.R. 60(B) in Ohio, the movant must demonstrate that (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken.  Civ.R. 60(B)(3) allows relief from a judgment for fraud.  A motion for relief from judgment under Civ.R. 60(B) lies in the trial court's sound discretion. *Anderson v. Anderson*, 5th Dist. Holmes No. 02CA015, 2003-Ohio-1248, ¶ 16.  In order to find an abuse of that discretion, we must determine the juvenile court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment.

{¶ 15} We find no merits to Father's arguments.  The Ohio Supreme Court has held that the "parent of a minor has the common-law duty of support as well as a duty of support decreed by court.  The judicial decree of support simply incorporates the common-law duty of support." *In re Adoption of McDermitt*, 63 Ohio St.2d 301, 305 (1980); *Burrowbridge v. Burrowbridge*, 5th Dist. Stark No. 2005CA00049, 2005-Ohio-6303.  The supreme court has further held that "[a]n obligation to pay child support arises by operation of law and is a personal duty owed to * * * the child, and society in general.  It does not arise out of any business transaction or contractual agreement[.]" *Cramer v. Petrie*, 70 Ohio St.3d 131, 135 (1994).

---

Ohio-886, ¶ 9, fn. 2; App.R. 16(C).  We therefore decline to address these additional arguments. *Id.*; *State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041, ¶ 61.

{¶ 16} The term Title IV-D is a "shorthand reference to those provisions enacted by the 'Social Services Amendment of 1974' to Title IV of the Social Security Act." *Blankenship v. Blankenship*, 4th Dist. Adams No. 528, 1992 Ohio App. LEXIS 6279, *7 (Dec. 8, 1992). Ohio "elected to participate in the Aid for Dependent Children ("ADC") program established by Title IV-A of the Social Security Act, Section 601 *et seq.*, Title 42, U.S.Code." *Cramer* at 134. As a condition to receiving federal funding for ADC, the state is obligated to obtain and enforce child support orders against noncustodial parents. *Id.* "In 1975, Congress removed the child support program from Title IV-A and created a separate child support program in Title IV-D of the Social Security Act. Section 651 *et seq.*, Title 42, U.S.Code." *Id.*

{¶ 17} "This legislation appropriates federal funds for the benefit of states which implement carefully tailored programs to, among other things, enforce child support obligations." *Blankenship* at *8. "The Ohio General Assembly has, in turn, enacted legislation which designates the Department of Human Services, Division of Child Support, as the state body which shall administer programs necessary to comply with the title IV-D requirements for enforcement and collection of support orders." *Id.* "Moreover, each county is required to designate a child support enforcement agency which shall operate a program for child support enforcement in compliance with the title IV-D requirements." *Id.* Under Title IV-D, states are required to provide child support enforcement services to families that receive ADC benefits as well as families that do not. *See Carelli v. Howser*, 923 F.2d 1208 (6th Cir.1991).

{¶ 18} State programs under Title IV-D are designed for the purpose of enforcing the support obligations owed by absent parents to their children. *Cuyahoga Cty. Support Enforcement Agency v. Lozada*, 102 Ohio App.3d 442, 446 (8th Dist.1995). "As stated in Title IV-D, the overriding concern of this program is to ensure optimum results in helping

parents secure the proper amount of child support from the absent parents of their children." *Id.* at 448. The Ohio Supreme Court has recognized that "Ohio has a direct financial interest in the enforcement of child support orders." *Cramer*, 70 Ohio St.3d at 134. "Families receiving ADC are required to assign their interests in child support to the state." *Id.* "In addition, payments on child support arrearage are used in their entirety to compensate the state for the ADC payments made to the family." *Id.* at 134-135. Thus, the state has a strong interest in improving and ensuring the enforcement of child support obligations because the public fisc is at stake. *Id.* Title IV-D child support cases in Ohio are governed by R.C. Chapter 3125.

{¶ 19} The fact that Ohio has a direct financial interest in the enforcement of child support orders owed by absent parents to their children, and that, as Father asserts, a hearing officer's salary is paid partially or wholly from federal funds received from the department of health and human services in exchange for state agencies to establish and enforce child support orders under Title IV-D, does not mean the hearing officer was biased or that the officer had a pecuniary interest in the outcome of the case. We note that in addition to issuing an administrative child support order, the CSEA is empowered to administratively review existing child support orders and may recommend that the child support obligation be reduced or terminated.

{¶ 20} Father cites two decisions of the United States Supreme Court in support of his argument that the administrative orders and juvenile court orders regarding child support were void because of the state's pecuniary interest. *Tumey v. Ohio,* 272 U.S. 510, 47 S.Ct. 437 (1927); *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 129 S.Ct. 2252 (2009). Both decisions are inapplicable.

{¶ 21} *Tumey* involved a village mayor who had a direct, pecuniary interest in convicting people of violating a state law prohibiting the possession of alcoholic beverages.

Specifically, the mayor could only be paid for his services as a judge if he convicted those who were brought before him, and he had an interest in generating revenue for the village by convicting and fining those before him. Reversing the defendant's conviction, the Supreme Court held that the practice violated the Fourteenth Amendment to the United States Constitution and deprived the defendant of due process by subjecting his liberty or property to the judgment of a court, the judge of which had a direct, personal, and substantial pecuniary interest in reaching a conclusion against him in his case. *Tumey* at 523. The Supreme Court further held that the Due Process Clause required disqualification of the mayor-judge "both because of his direct pecuniary interest in the outcome, and because of his official motive to convict and to graduate the fine to help the financial needs of the village." *Id.* at 535.

{¶ 22} In *Caperton*, the Supreme Court held that due process requires a judge's recusal "when a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent." *Caperton*, 556 U.S. at 884. Under this test, the Supreme Court held that a state supreme court justice was required to recuse himself from a case involving a corporate litigant whose chief executive officer had contributed $3 million to the justice's campaign for office. *Id.* at 873. The executive's contributions were more than the total amount spent by the justice's other supporters and three times the amount spent by the justice's own campaign committee. "On these extreme facts the probability of actual bias [rose] to an unconstitutional level." *Id.* at 886-887.

{¶ 23} Father's contention that the hearing officer was disqualified because of pecuniary interest is not tenable and does not come within the purview of *Tumey* or *Caperton*, because the hearing officer's salary is not dependent upon whether a child

support order is established in the first instance or upon the amount of child support ordered.

{¶ 24} Likewise, Father's contention that the establishment of paternity might be tainted in a Title IV-D child support case is speculative and not tenable as there is no evidence such happened here.

{¶ 25} Parentage is primarily governed by R.C. Chapter 3111. The father-child relationship may be legally established in Ohio by an acknowledgment of paternity. *See* R.C. 3111.20 to 3111.35. An acknowledgment of paternity occurs when a man affirms under oath, on a government prescribed form, that he is the natural father of the named child. *See* R.C. 3111.31. Pursuant to R.C. 3111.25, an acknowledgement of paternity becomes final and enforceable without ratification of the court when the acknowledgement has been entered in the birth registry and the 60-day time period for rescission under R.C. 3111.27 has passed. *Clark v. Malicote*, 12th Dist. Clermont No. CA2010-07-049, 2011-Ohio-1874, ¶ 12, fn. 3. After the acknowledgment of paternity becomes final, the acknowledgment may be rescinded pursuant to R.C. 3111.28 on the basis of fraud, duress, or material mistake of fact. An action under R.C. 3111.28, however, must be filed within one year of the acknowledgment becoming final. Once the acknowledgment becomes final, the man who signed it assumes the parental duty of support. R.C. 3111.26.[2]

{¶ 26} Pursuant to R.C. 3111.84, the father of a child who is the subject of an administrative support order may object to the order by bringing an action in the juvenile court under R.C. 2151.231. An action under R.C. 3111.84, however, must be filed no later

---

2. R.C. 3111.31 prescribes that the acknowledgment of paternity form include "in boldface type at the top of the affidavit the rights and responsibilities of and the due process safeguards afforded to a person who acknowledges that he is the natural father of a child, including that if an alleged father acknowledges a parent and child relationship he assumes the parental duty of support[.]" By signing the acknowledgment of paternity form, an alleged father affirms "that he has received information regarding his legal rights and responsibilities, that he consents to the jurisdiction of the courts of [Ohio], and that he is the natural father of the child named on the form and assumes the parental duty of support of the child." R.C. 3111.31(F). Father did not produce a copy of the acknowledgment of paternity or otherwise establish that the acknowledgment he signed was not in compliance with R.C. 3111.31.

than 30 days after the date the administrative support order is issued. If neither parent brings an action within that 30-day period, the administrative support order is final and enforceable by a court and may be modified only as provided in R.C. Chapters 3119, 3121, and 3123.

{¶ 27} Father testified he signed an acknowledgment of paternity at the time of the child's birth in 2010. Father never attempted to rescind the acknowledgment as required by R.C. 3111.28 for fraud, duress, or material mistake of fact. Father successfully objected to the original administrative child support order in 2014, thereby prompting a hearing followed by a decrease in his monthly child support obligation. In 2016, he again successfully objected to an administrative order, thereby prompting a hearing. His objection was sustained by the juvenile court and the amount of his monthly child support obligation was modified. There has been no new determination of child support since 2016. While Father twice objected to an administrative order, he never raised any of the issues he raised in his motion to set aside or now raises on appeal.

{¶ 28} In light of the foregoing, we find that the juvenile court did not err in denying Father's motion to set aside a void judgment. Father's assignment of error is overruled.

{¶ 29} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.