Anna MASON, on her own behalf and as next friend of Romeshia Mason and Charles Mason, Plaintiff,

v.

Phil BRADLEY, in his official capacity as Director of the Illinois Department of Public Aid; Mary Sue Morsch, in her official capacity as Director of the Child Support Division of the Illinois Department of Public Aid; and Jack O'Malley, in his official capacity as the State's Attorney for the County of Cook in the State of Illinois, Defendants.

No. 91 C 3791.

United States District Court, N.D. Illinois, E.D.

April 20, 1992.

Lori J. Polacheck, Gary H. Palm, Mandel Legal Aid Clinic, Chicago, Ill., for plaintiff.

James C. Stevens, Jr., Office of the Atty. Gen., Welfare Litigation Div., Teresa Mary Mooney, Barbara L. Greenspan, Illinois Atty. General's Office, Chicago, Ill., for Phil Bradley and Mary Sue Morsch.

Terry L. McDonald, David Richard Butzen, Cook County State's Atty.'s Office, Chicago, Ill., for Jack O'Malley.

## ORDER

NORGLE, District Judge.

Before the court are the defendants' motions to dismiss. For reasons that follow, the motions are granted.

## FACTS

This lawsuit stems from plaintiff Anna Mason's ("Mason") allegedly unsuccessful efforts to spur the Illinois Department of Public Aid ("IDPA") and the Cook County State's Attorney's office ("State's Attorney") to obtain a child support order from Mason's former husband, Arthur Burrell ("Burrell"). Mason and Burrell were divorced in September 1982, with Mason receiving custody of their two children, Romeshia and Charles. The divorce decree made no provision for support of the children.

The State of Illinois is a participant in the federal Aid to Families with Dependent Children ("AFDC") program, set up under Title IV-A of the Social Security Act, 42 U.S.C. § 601 et seq. Illinois is required, as a condition of its AFDC participation, to operate a child support program as provided in Title IV-D of the Social Security Act, 42 U.S.C. § 651 et seq. The Title IV-D program in Illinois is overseen by IDPA's Child Support Enforcement Division ("Child Support Enforcement"). That program must offer services to locate absent parents who may be liable for child support payments. 42 U.S.C. § 654(8).

Federal regulations required that, prior to October 1, 1990, attempts to locate absent parents must have been made within 60 days of an application for such services. 45 C.F.R. § 303.3. Current regulations require that such attempts must be made within 75 days after it is determined that such services are necessary. Id. When location attempts have failed, repeat attempts must be made quarterly, but if new information is received, immediate repeat attempts are required. Id. If an absent parent is located or paternity is established, the state's Title IV-D agency must either issue, or initiate legal proceedings seeking, a child support order within 90 days. 45 C.F.R. § 303.4(d). Continued federal funding of a state's AFDC program requires "substantial compliance" with the regulations, which is defined as 75 percent compliance in cases audited by the federal Department of Health and Human Services. 45 C.F.R. § 305.20.

Mason receives AFDC payments from IDPA on behalf of her children. Those payments are conditioned upon Mason's assignment of her child support rights to IDPA, which can utilize money collected from absent parents to recoup amounts paid out in AFDC or related benefits. The first $50 of any amounts collected from an absent parent each month, however, must be paid to the custodial parent without affecting the level of aid to the parent or children. 42 U.S.C. § 657(b)(1).

About June 30, 1987, Mason went to a Child Support Enforcement office to request services to locate Burrell. Child Support Enforcement and other responsible state agencies, however, allegedly failed to follow the federal regulations. Not all available resources were used to find Burrell and repeat efforts were not made in a timely manner, according to Mason's complaint. There have allegedly been no enforcement actions taken against Burrell since the summer of 1987, and no child support order has been entered against Burrell. IDPA allegedly failed to followup adequately after identifying two of Burrell's employers in 1990, and after Mason's attorney informed IDPA of Burrell's then-current job around February 15, 1991.

Mason filed the present lawsuit on June 19, 1991 asserting two claims. Count I asserts an action directly under Title IV–D for the defendants' alleged failure to follow the requirements of that statute and the allegedly resultant emotional distress and financial hardship Mason has suffered. Count II asserts that Mason's 14th Amendment due process rights were violated by the defendants' failure to provide her with child support services to which she is entitled under federal law and the Illinois Public Aid Code, Ill.Rev.Stat. ch. 23, ¶ 10–1 *et seq.* The complaint seeks a declaration that Mason's rights were violated, an order directing the defendants to provide Mason with child support services in a timely manner, and an injunction barring future violations of Mason's rights, as well as other relief.

## DISCUSSION

Defendants Phil Bradley and Mary Sue Morsch, respectively the director of IDPA and the administrator of IDPA's Child Support Enforcement Division, together filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They contend that Mason lacks standing, and her complaint should therefore be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. Alternatively, they seek dismissal under Rule 12(b)(6) for failure to state an actionable claim, arguing that Title IV–D creates neither a private right of action nor rights actionable under 42 U.S.C. § 1983. Defendant Jack O'Malley, the State's Attorney of Cook County, filed a separate motion to dismiss under Rule 12(b)(6) on essentially the same grounds as those argued by Bradley and Morsch.

On a motion to dismiss under both Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim, the court should decide the 12(b)(1) issues first and, only if it finds jurisdiction, proceed to the 12(b)(6) issues. *Winslow v. Walters*, 815 F.2d 1114, 1116 (7th Cir.1987); *Oliphant v. Bradley*, No. 91 C 3055, slip op. at 9 (N.D.Ill. Feb. 19, 1992).

The court therefore turns first to the jurisdiction/standing issue. Federal judicial power is limited under Article III of the Constitution to adjudication of "cases and controversies." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982). That limitation includes a requirement that the plaintiff have standing to bring the action, which in turn requires that the plaintiff "personally has suffered some actual or threatened injury." *Id.* at 471–72, 102 S.Ct. at 758 (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979)).

Analysis of a party's standing is "gauged by the specific common-law, statutory or constitutional claims that a party presents.... [with] 'careful judicial examination ... to ascertain whether the particular plaintiff is entitled to an adjudication *of the particular claims asserted.' " International Primate Protection League v. Administrators of Tulane Educ. Fund*, — U.S. —, 111 S.Ct. 1700, 1704, 114 L.Ed.2d 134 (1991) (emphasis in original) (quoting *Allen v. Wright*, 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984)). Where, as here, the claims are based on statutorily created rights, "the standing question ... is whether the ... statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Moreover, the plaintiff must have suffered, or be about to suffer, a "demonstrable, particularized" injury, *Id.* at 508, 95 S.Ct. at 2210, which is "fairly traceable" to the defendants' alleged conduct. *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1925–26, 48 L.Ed.2d 450 (1976). The plaintiff must also show that the requested relief will likely redress the alleged injury. *Allen*, 468 U.S. at 751, 104 S.Ct. at 3324–25.

Standing for Mason on Count I— her direct claim under Title IV–D—therefore turns on whether that statute created

an express or implied private right of action. *Warth*, 422 U.S. at 501, 95 S.Ct. at 2206. A private right of action can only be created if the federal statute in question creates enforceable rights, *Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1, 24–25, 101 S.Ct. 1531, 1543–44, 67 L.Ed.2d 694 (1981), and Congress did not intend to foreclose private enforcement by the statute's terms, such as by creating a comprehensive remedial scheme. *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 14, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981). Mason's standing on Count II—her § 1983 claim for violation of her rights under Title IV–D—turns on whether Title IV–D created an enforceable right, privilege or immunity for Mason. *See Suter v. Artist M.*, — U.S. ——, ——, 112 S.Ct. 1360, 1365–66, 118 L.Ed.2d 1 (1992) (discussing availability of § 1983 to redress alleged federal statutory violations). Therefore, if Title IV–D did not create any enforceable rights for persons in Mason's position, Mason will lack standing to pursue either Counts I or II.

▆▆ An enforceable right is created if "the provision in question was intend[ed] to benefit the putative plaintiff," unless the provision expresses a mere Congressional preference for particular conduct rather than a binding obligation on a governmental unit to behave in a prescribed manner. *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990) (quoting *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989)).

The Seventh Circuit has not yet addressed whether Title IV–D created an enforceable right for AFDC recipients such as Mason and her children, or whether such recipients were intended beneficiaries of the statute. Two other circuits, however, have split on these issues. The Eleventh Circuit has held that Title IV–D did not create any enforceable rights because "it was not enacted for the 'especial benefit' of AFDC families." *Wehunt v. Ledbetter*, 875 F.2d 1558, 1565 (11th Cir.1989), *cert. denied*, 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 609 (1990). More recently, the Sixth Circuit reached an opposite conclusion, finding that Title IV–D was intended to benefit both "the public fisc" by reducing welfare costs and AFDC families. *Carelli v. Howser*, 923 F.2d 1208, 1211 (6th Cir.1991). The *Carelli* court nonetheless ordered the complaint dismissed for failure to state an actionable claim because the requested relief was already being ordered as a result of a federal audit of the state Title IV–D programs at issue. *Id.* at 1215–16.

At least four district courts have agreed with *Carelli* that Title IV–D was intended to benefit AFDC families. *Oliphant*, slip op. at 14–15 (but finding no enforceable right because no binding obligation on states participating in AFDC program); *Howe v. Ellenbecker*, 774 F.Supp. 1224, 1229–30 (D.S.D.1991) (and finding enforceable right because language mandatory); *Behunin v. Jefferson County Dept. of Social Serv.*, 744 F.Supp. 255, 257–58 (D.Colo. 1990) (same); *Beasley v. Harris*, 671 F.Supp. 911, 921 (D.Conn.1987) (and finding an enforceable right).

After reviewing the relevant portions of Title IV–D, we agree that Congress evinced an intent to benefit both AFDC families and local welfare budgets. The former purpose is evident particularly in the $50 pass-through provision entitling AFDC families to the first $50 collected each month by a Title IV–D agency from a delinquent child support payer. 42 U.S.C. § 657(b)(1).

Nonetheless, Title IV–D must also provide "unambiguous notice" of particular, mandatory obligations upon the states to create enforceable rights for Mason. *Suter*, — U.S. at ——, 112 S.Ct. at 1366. In this regard, the court agrees with the finding in *Oliphant*, slip op. at 16, that Title IV–D does not clearly require participating states "to provide effective, prompt child support services to all AFDC applicants...." Illinois, like other states which have voluntarily agreed to participate in the AFDC program, are required to offer child support services as a condition of federal funding. The implementing regula-

tions provide some specific time frames for the states to follow, such as the 75–day period in which efforts to locate absent parents must be made after such efforts are deemed necessary. 45 C.F.R. § 303.3. Total compliance, however, is not required. The regulations specify that only "substantial compliance," defined as 75 percent compliance in cases federally audited, is required. 45 C.F.R. § 305.20. Full compliance with the regulations in every case is clearly not required. Therefore, there is no clear requirement that every applicant be provided with prompt child support services, and Mason has no enforceable right to such services.

In sum, the lack of an enforceable right in Title IV–D for AFDC families such as Mason's requires the conclusion that Congress neither expressly nor· impliedly intended to create a private right of action under that statute, and also did not create rights entitled to protection under the Fourteenth Amendment due process clause and 42 U.S.C. § 1983. Mason has failed to show that she has standing to pursue the claims contained in either Counts I or II of her complaint, and the complaint is therefore dismissed in its entirety under Fed. R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

## CONCLUSION

The defendants' motions to dismiss are granted; Counts I and II of the plaintiff's complaint are dismissed for lack of subject matter jurisdiction.

IT IS SO ORDERED.