[Cite as *Story v. Story*, 2021-Ohio-2439.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JIMMY STORY,                    :

    Plaintiff-Appellant,        :            No. 109850

    v.                          :

VERONICA STORY,                 :

    Defendants-Appellee.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 15, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-07-318250

---

### *Appearances:*

Jimmy Story, *pro se.*

Veronica Story, *pro se.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Charlie Wu, Assistant Prosecuting Attorney, *for appellee* Cuyahoga County Office of Child Support Services.

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Plaintiff-appellant Jimmy Story ("Father") appeals, pro se, from the trial court's judgment entry approving and adopting a magistrate's decision that

modified his child support obligation for his minor child, L.S. Father contends that the trial court's judgment should be reversed because (1) there is no legal basis for imposing any child support obligation upon him, (2) the child support order is void due to the state's pecuniary interest in imposing and enforcing child support obligations under Title IV-D and (3) he was denied due process. Father requests that his child support payments be terminated and that he be granted restitution, including reimbursement of "all money taken from him for child support." For the reasons that follow, we affirm the trial court.

**Procedural and Factual Background**

{¶ 2} On October 10, 2007, Father filed a complaint for divorce in the Cuyahoga County Court of Common Pleas against his wife, appellee Veronica Price-Story ("Mother"). At that time, the couple had three minor children — B.S. (d.o.b. 11/26/98), A.S. (d.o.b. 03/19/00) and L.S. (d.o.b. 01/31/02). The final judgment entry of divorce was entered on February 25, 2009. Parental rights and responsibilities were allocated primarily to Mother, and Father was ordered to pay $903.25 a month[1] (plus 2 percent processing fee) in child support for the three children.

{¶ 3} B.S. graduated from high school on June 2, 2017. On October 18, 2017, the trial court modified Father's child support obligation, and Father was

---

[1] The child support figures referenced herein are the amounts due when private health insurance is provided by a party.

ordered to pay $994.96 a month in child support (plus 2 percent processing fee) for his two remaining minor children, effective June 3, 2017.

{¶ 4} A.S. graduated from high school on June 2, 2018. On July 18, 2018, Mother filed a motion to modify child support. On August 10, 2018, Father filed a motion for recalculation of support, a motion to dismiss modification for support and his own motion for modification of support. On August 22, 2018, the trial court joined appellee Cuyahoga County Office of Child Support Services ("OCSS") as a party defendant and ordered it to provide a certified receipt calculation and child support payment history for the case.

{¶ 5} A hearing on the parties' child support motions was held before a magistrate on March 4, 2019, April 8, 2019 and May 13, 2019. The magistrate issued a written decision on August 13, 2019 and an amended decision on August 15, 2019, correcting certain clerical errors.

{¶ 6} The magistrate found that (1) Father's child support obligation should be modified to reflect the emancipation of A.S., (2) a substantial change in circumstances had occurred and (3) an upward deviation of $200 per month from the "presumed correct monthly child support obligation," calculated using the child support worksheet, was warranted after considering the relative financial resources of the parties, the disparity in the parties' incomes and a comparison of L.S.'s current standard of living with what her standard of living would have been had her parents remained married. The magistrate also found, based on the certified receipt

calculation and payment history provided by OCSS, that Father had an overpayment of $300.83 on his child support obligation.

{¶ 7} The parties filed objections to the magistrate's decision. No transcript of the hearing was filed with the trial court. Accordingly, the trial court was limited to reviewing the parties' legal arguments. The trial court overruled the parties' objections and approved and adopted the magistrate's decision. On June 26, 2020, the trial court entered a judgment entry ordering Father to pay a modified monthly child support obligation of $497.48 (plus 2 percent processing fee) effective June 3, 2019 through July 17, 2019 and a modified monthly child support obligation of $976.50 (plus 2 percent processing fee) effective July 18, 2019.

{¶ 8} Father appealed, raising the following three assignments of error for review:

> Assignment of Error 1: The trial court erred, abused its discerption [sic], violated state/federal rules and due process (or any which apply) by issuing orders for child support when there is no legal right to child support and must void orders and case.
>
> Assignment of Error 2: The trial court erred, abused its discerption [sic], violated state/federal rules and due process (or any which apply) by issuing orders for child support not based on law of an article 3 court but based on a personal contract they [sic] personally benefit from.
>
> Assignment of Error 3: The trial court erred, abused its discerption [sic], violated state/federal rules and due process (or any which apply) by issuing order[s] which violate the constitution, due process and restitution is required.

**Law and Analysis**

**Father's Legal Obligation to Pay Child Support**

**{¶ 9}** In his first assignment of error, Father argues that the trial court's child support order is void because there is "no child support law" and "no legal right to child support" under Ohio law. Father's argument is meritless.

**{¶ 10}** As the Ohio Supreme Court explained in *In re Adoption of B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, ¶ 27, there are "two statuses of parental obligation" under Ohio law: (1) the general obligation of parents to support their children imposed by law in R.C. 3103.03 and (2) the specific child support obligation imposed by judicial decree pursuant to R.C. 3109.05 and R.C. Chapter 3119 that "supersedes the general obligation once the court issues its decree."

**{¶ 11}** R.C. 3103.03 sets forth a parent's general obligation to support his or her children in the absence of a child support order. R.C. 3103.03(A) states, in relevant part: "The biological or adoptive parent of a minor child must support the parent's minor children out of the parent's property or by the parent's labor." "'Under R.C. 3103.03, all parents, whether married or not, have a duty to support their minor children; it follows logically from this that all children have a right to be supported by their parents, regardless of the parents' marital status." *In re Adoption of B.I.* at ¶ 21, quoting *In re Dissolution of Marriage of Lazor*, 59 Ohio St.3d 201, 202, 572 N.E.2d 66 (1991). R.C. 3103.03 "subsumes" a parent's common-law duty to support his or her minor children. *In re Adoption of B.I.* at ¶ 20, 26 ('"The

common-law duty to support one's minor children has been replaced by R.C. 3103.03.'"), quoting *Nokes v. Nokes*, 47 Ohio St.2d 1, 5, 351 N.E.2d 174 (1976).

{¶ 12} In addition, R.C. 3109.05 '"sets forth the power of the trial court to make child support orders when a marriage terminates."' *In re Adoption of B.I.* at ¶ 22, quoting *Meyer v. Meyer*, 17 Ohio St.3d 222, 223, 478 N.E.2d 806 (1985). Pursuant to R.C. 3109.05(A)(1), "[i]n a divorce, dissolution of marriage, legal separation, or child support proceeding, the court may order either or both parents to support or help support their children." *See also* R.C. 3109.05(A)(3) ("The court shall comply with Chapters 3119, 3121, 3123, and 3125 of the Revised Code when it makes or modifies an order for child support under this section."). Once issued, the child support order determines the parent's child support obligation. *In re Adoption of B.I.* at ¶ 26.

{¶ 13} The trial court also has the ability to modify a child support order when a change in circumstances requires it under R.C. 3119.79. *See, e.g., In re Adoption of B.I.* at ¶ 24 ("'It has long been recognized in Ohio that a court retains continuing jurisdiction over its orders concerning the custody, care, and support of children * * *. A child affected by such an order is considered a ward of the court, which may always reconsider and modify its rulings when changed circumstances require it during the child's minority.'"), quoting *Singer v. Dickinson*, 63 Ohio St.3d 408, 413-414, 588 N.E.2d 806 (1992); *see also* R.C. 3119.79.

{¶ 14} In support of his contention that there is "no legal right to child support" under Ohio law, Father cites *Blessing v. Freestone*, 520 U.S. 329, 117 S.Ct.

1353, 137 L.Ed.2d 569 (1997), *Wehunt v Ledbetter,* 875 F.2d 1558 (11th Cir.1989), *Mason v. Bradley*, 789 F. Supp. 273 (N.D.Ill.1992), and *Fitzgerald v. Fitzgerald*, 566 A.2d 719 (D.C. 1989). Father's reliance on these cases is misplaced. None of these cases relied upon by Father in challenging the trial court's child support order supports his position

{¶ 15} In *Blessing*, a group of Arizona mothers whose children were eligible for state child support services under Title IV-D filed suit against the director of the state child support agency, alleging that the agency had failed to take adequate steps to obtain child support payments for them. 520 U.S. at 332-333, 337, 117 S.Ct. 1353, 137 L.Ed.2d 569. The United States Supreme Court held that Title IV-D did not give individuals a federal right to force a state agency to "substantially comply" with Title IV-D. *Id.* at 333, 343-344.

{¶ 16} Similarly, in *Wehunt,* the Eleventh Circuit held that Title IV-D did not "create any enforceable right" because "it was not enacted for the 'especial benefit' of AFDC families." 875 F.2d at 1565. In *Mason,* the United States District Court for the Northern District of Illinois held that a welfare recipient did not have a private right of action under Title IV-D because the statute did not specifically require that all applicants be provided with prompt child support services by the state agency. 789 F. Supp. at 276-277. In *Fitzgerald*, the District of Columbia Court of Appeals held that child support guidelines adopted by the District of Columbia Superior Court were "invalid" because they "change[d] substantive law." 566 A.2d at 732.

{¶ 17} Based on R.C. 3103.03, 3109.05(A)(1) and the substantial case law interpreting and applying those provisions, it is clear that a parent has a legal obligation to support his or her minor children under Ohio law. In this case, Father's child support obligation was properly set forth in the trial court's child support order imposed under R.C. 3109.05(A)(1), and later modified, in accordance with R.C. Chapter 3119. Accordingly, Father's first assignment of error is overruled.

**Father's Claims Based on the Uniform Commercial Code and Title IV-D**

{¶ 18} In his second assignment of error, Father argues that child support is a matter of contract, "governed by the UCC," and that because he is not a party to any contract for child support and has "never knowingly agreed to pay or signed anything," he has no enforceable child support obligation under sections 2-106, 2-205, 2-206, 2-207, 2-208, 2-302 and 2-319 of the Uniform Commercial Code ("U.C.C."). Father also contends that the trial court's child support order is void (and that all court orders imposing child support are void) because the state has a pecuniary interest in imposing and enforcing child support orders under Title IV-D and judicial enforcement of child support orders is part of a fraudulent, "money-making" scheme by the state to maximize the funding it receives under Title IV-D. Once again, Father's arguments are meritless.

{¶ 19} As stated above, a parent's legal obligation to pay child support is not a matter of contract. "An obligation to pay child support arises by operation of law and is a personal duty owed to the former spouse, the child, and society in general.

It does not arise out of any business transaction or contractual agreement." *Cramer v. Petrie*, 70 Ohio St.3d 131, 135, 637 N.E.2d 882 (1994).

{¶ 20} The Uniform Commercial Code ("U.C.C.") applies to contracts involving the sale of goods and other commercial transactions. Child support is not governed by the U.C.C. *Cf. State v. Collins*, 10th Dist. Franklin No. 17AP-703, 2018-Ohio-2606, ¶ 11 (observing that "the UCC does not apply to nonsupport of dependents" and that the trial court, therefore, "properly concluded that evidence regarding the applicability of the UCC was not relevant to appellant's failure to provide support for his child, under Evid.R. 401, or admissible under Evid.R. 402 and 403"); *see also In re Lucius H.*, Tenn.App. No. M2016-00534-COA-R3-JV, 2016 Tenn. App. LEXIS 817, 11 (Oct. 31, 2016) ("[T]he Uniform Commercial Code only applies to various types of commercial contracts and transactions. Issues of * * * child support are not governed by the Uniform Commercial Code."). Accordingly, Father's arguments relating to the application of the U.C.C. are misplaced and do not provide a basis for reversal.

{¶ 21} With respect to Father's arguments related to Title IV-D, "Title IV-D" is a "'shorthand reference to those provisions enacted by the "Social Services Amendment of 1974" to Title IV of the Social Security Act."' *In re Z.M.*, 12th Dist. Butler No. CA2018-04-070, 2019-Ohio-1192, ¶ 12, quoting *Blankenship v. Blankenship*, 4th Dist. Adams No. 528, 1992 Ohio App. LEXIS 6279, 7 (Dec. 8, 1992). Title IV-D requires states to provide various child support services, including

services related to the establishment, modification and enforcement of child support obligations, in exchange for receiving certain federal funds. *See* 42 U.S.C. 651-669b.

{¶ 22} In *Cramer*, the Ohio Supreme Court explained the history and role of Title IV-D as it relates to the imposition and enforcement of child support obligations as follows:

> Ohio * * * elected to participate in the Aid for Dependent Children ("ADC") program established by Title IV-A of the Social Security Act, 42 U.S.C. 601 et seq. As a condition to receiving federal funding for ADC, the state is obligated to obtain and enforce child support orders against noncustodial parents.
>
> In 1975, Congress removed the child support program from Title IV-A and created a separate child support program in Title IV-D of the Social Security Act. Section 651 et seq., Title 42, U.S.Code (88 Stat. 2351). Title IV-D allows states, including Ohio, to receive federal financial assistance if they operate efficient and cost-effective child support enforcement programs. Ohio is periodically audited by the Secretary of the United States Department of Health and Human Services to determine whether it has complied with the numerous requirements of Title IV-D, requirements that have as their goal the enforcement of child support orders. If the audit reveals that Ohio has not met the federal requirements, federal financial assistance is decreased, thereby indirectly increasing the state's financial burden.
>
> In addition, Ohio has a direct financial interest in the enforcement of child support orders. Families receiving ADC are required to assign their interests in child support to the state. * * *

70 Ohio St.3d at 134, 637 N.E.2d 882. The Twelfth District further explained in *In re Z.M.*:

> "This legislation appropriates federal funds for the benefit of states which implement carefully tailored programs to, among other things, enforce child support obligations." *Blankenship* at 8. "The Ohio General Assembly has, in turn, enacted legislation which designates the Department of Human Services, Division of Child Support, as the state body which shall administer programs necessary

to comply with the title IV-D requirements for enforcement and collection of support orders." *Id.* "Moreover, each county is required to designate a child support enforcement agency which shall operate a program for child support enforcement in compliance with the title IV-D requirements." *Id.* Under Title IV-D, states are required to provide child support enforcement services to families that receive ADC benefits as well as families that do not. *See Carelli v. Howser*, 923 F.2d 1208 (6th Cir.1991).

State programs under Title IV-D are designed for the purpose of enforcing the support obligations owed by absent parents to their children. *Cuyahoga Cty. Support Enforcement Agency v. Lozada*, 102 Ohio App.3d 442, 446, 657 N.E.2d 372 (8th Dist.1995). "As stated in Title IV-D, the overriding concern of this program is to ensure optimum results in helping parents secure the proper amount of child support from the absent parents of their children." *Id.* at 448. * * * [T]he state has a strong interest in improving and ensuring the enforcement of child support obligations because the public fisc is at stake. [*Cramer* at 134-135].

*In re Z.M.* at ¶ 17-18.

**{¶ 23}** Father argues that because "[s]tates can earn more money according to the [Title IV-D] contract by reaching child support arrearages and child support enforcement quotas," judges who rule on child support matters (whose salaries are paid, at least in part, by the state) have a conflict of interest comparable to "[w]hen a judge receives a bribe * * * and is seen as a trespasser of the law and all orders are voided."

**{¶ 24}** The Twelfth District recently rejected a similar argument in *In re Z.M.* In that case, a father argued that because the salary of the hearing officer who imposed the original administrative child support order relating to his minor child was paid in whole or in part from federal funds received under Title IV-D, the hearing officer had a pecuniary interest in the outcome of the case and, therefore,

the original administrative child support order and all subsequent administrative orders and juvenile court orders imposing child support were void. *In re Z.M.*, 2019-Ohio-1192, at ¶ 12. In rejecting the father's argument, the Twelfth District stated:

> The fact that Ohio has a direct financial interest in the enforcement of child support orders owed by absent parents to their children, and that, as Father asserts, a hearing officer's salary is paid partially or wholly from federal funds received from the department of health and human services in exchange for state agencies to establish and enforce child support orders under Title IV-D, does not mean the hearing officer was biased or that the officer had a pecuniary interest in the outcome of the case. We note that in addition to issuing an administrative child support order, the CSEA is empowered to administratively review existing child support orders and may recommend that the child support obligation be reduced or terminated. * * * Father's contention that the hearing officer was disqualified because of pecuniary interest is not tenable * * * because the hearing officer's salary is not dependent upon whether a child support order is established in the first instance or upon the amount of child support ordered.

*Id.* at ¶ 19-23. A similar conclusion is warranted in this case.

{¶ 25} There is nothing in the record to suggest that the trial court's decision to modify Father's child support obligation in this case was the product of any fraud, bias, impartiality, pecuniary interest or any other conflict of interest on the part of the magistrate or the trial court judge. A trial court that enters a child support order retains continuing jurisdiction over child support matters. *See, e.g., J.E.M. v. D.N.M.*, 8th Dist. Cuyahoga No. 109532, 2021-Ohio-67, ¶ 31, 35. Father does not dispute that the magistrate or trial court judge fully complied with the requirements of R.C. Chapter 3119 in determining (1) that Father's child support obligation should

be modified and (2) determining the amount of his modified child support obligation.

{¶ 26} Father's second assignment of error is overruled.

**Father's Alleged Due Process Violations**

{¶ 27} In his third assignment of error, Father reiterates several of the arguments made in support of his prior assignments of error and further argues that trial court's judgment should be reversed because he was denied "due process." Father does not identify any specific "due process" violations he contends occurred below other than to assert that (1) he was "never served in his current case or in previous past cases multiple times," (2) the trial court denied his requests for a "denovo [sic] hearing" and a "video recording hearing for fairness," (3) the trial court "refus[ed] to answer questions" he had asked, (4) the trial court dismissed "various motions" without a hearing and (5) the trial court "refused to accept" 31 exhibits he had offered into evidence at the child support hearing.

{¶ 28} Father has not shown that any due process violations occurred in this case. First, although the trial court found that Father had not been served with Mother's motion to modify support and that he had refused to waive service of the motion, the trial court also found that Father also filed his own motions for modification and/or recalculation of child support and appeared and participated in the hearing on the parties' child support motions without raising a defense of insufficiency of service of process. Thus, Father clearly invoked the trial court's continuing jurisdiction, subjected himself to the jurisdiction of the trial court and

waived any defense based on insufficiency of service of process related to Mother's motion. *See, e.g., Sweeney v. Sweeney*, 2016-Ohio-1384, 63 N.E.3d 542, ¶ 25 (8th Dist.) ("Where a party appears in court, fails to object to improper service * * * and defends on the merits of the case, that party will be deemed to have waived the issue of improper service."), citing *Bedi-Hetlin v. Hetlin*, 3d Dist. Seneca No. 13-14-08, 2014-Ohio-4997, ¶ 26, and *Huston v. Huston*, 5th Dist. Coshocton No. 2013CA0030, 2014-Ohio-5654, ¶ 37; *see also Longshore v. White*, 8th Dist. Cuyahoga No. 66363, 1994 Ohio App. LEXIS 2185, 3-6 (May 19, 1994) (although plaintiff improperly served defendant by ordinary mail, defendant waived any objection to the trial court's exercise of continuing jurisdiction where he submitted numerous pleadings and attended the hearing on the motion without contesting jurisdiction). Father does not dispute that he had notice of and a full and fair opportunity to appear and defend against Mother's motion to modify child support and a full and fair opportunity to present evidence in support of his own child support motions at the hearing.

{¶ 29} Second, Father's brief contains no citations to the record and no citations to relevant, supporting legal authority. An appellant's brief must include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7). An appellate court may disregard an assignment of error presented for review if the appellant fails to identify in the

record the error on which the assignment of error is based, fails to cite to any legal authority in support of an argument or fails to argue the assignment separately in the brief, as required under App.R. 16(A)(7). *See* App.R. 12(A)(2); *Johnson v. New Direction IRA F.B.O. King C. Lam*, 8th Dist. Cuyahoga No. 106628, 2018-Ohio-4608, ¶ 10. Father's generalized assertions that his due process rights were violated — without any explanation, citation to the record or citation to supporting legal authorities — do not satisfy Father's obligations under App.R. 16(A)(7).

{¶ 30} Without proper citations to the record, we are unable to discern under what circumstances Father allegedly made, and the trial court allegedly refused, Father's requests for a "de novo" hearing and a "video recording hearing," what motions Father contends were improperly dismissed without a hearing and what "questions" Father allegedly asked the trial court that it "refused to answer." An appellate court is "not obliged to construct or develop arguments" to support an appellant's assignment of error and "will not 'guess at undeveloped claims on appeal.'" *State v. Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 56 (8th Dist.), quoting *McPherson v. Goodyear Tire & Rubber Co.*, 9th Dist. Summit No. 21499, 2003-Ohio-7190, ¶ 31. "'If an argument exists that can support this assigned error, it is not this court's duty to root it out.'" *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 72, quoting *Cardone v. Cardone*, 9th Dist. Summit Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028, 22 (May 6, 1998).

{¶ 31} Further, although the record reflects that a recording was made of the child support hearing held on March 4, 2019, April 8, 2019 and May 13, 2019, Father

did not order a transcript of the hearing. As such, this court must presume regularity in the trial court's proceedings. *See, e.g., Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980) ("When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and, thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.").

{¶ 32} Finally, although Father claims that the trial court "refused to accept" 31 exhibits he had offered into evidence at the child support hearing, the record reflects otherwise. The magistrate's decision indicates that these exhibits "were admitted into evidence without objection."

{¶ 33} Father's third assignment of error is overruled.

**Motion to Have Father Declared a Vexatious Litigator**

{¶ 34} On January 15, 2021, OCSS filed a motion to find Father a vexatious litigator pursuant to Loc.App.R. 23.[2]

{¶ 35} Under Loc.App.R. 23(A), this court may impose "appropriate sanctions" on a person who signs an appeal or motion that is "frivolous or is prosecuted for delay, harassment, or any other improper purpose." Loc.App.R. 23(B) further provides that if a person "habitually, persistently, and without reasonable cause" engages in frivolous conduct under Loc.App.R. 23(A), this court

_____

[2] OCSS' motion to find Father a vexatious litigator was joined with a motion to strike Father's appellate brief. On January 26, 2021, this court granted the motion in part, striking the attachments to Father's brief. OCSS' request that Father be found a vexatious litigator was referred to the merit panel.

may declare the person to be a vexatious litigator and impose various "filing restrictions" upon them.

{¶ 36} OCSS argues that Father should be declared a vexatious litigator due to (1) Father's filing, in this case, of a meritless appellate brief, 11 motions with this court and "about 34 motions" with the trial court, (2) his filing of "multiple pro se motions before retaining counsel" when appealing from the parties' divorce decree in 2009 and (3) his conduct during the trial proceedings (including his filing of "about 60 motions in a span of about two years") and appeal (including his filing of "more than 20 motions and a 41 page[ ] brief" in another divorce case in 2018.

{¶ 37} Based on the record before us, we cannot say that Father has "habitually, persistently, and without reasonable cause" engaged in "frivolous conduct" so as to warrant a declaration that he is a vexatious litigator. *Compare, e.g., State ex rel. Newell v. Court of Common Please Cuyahoga Cty.*, 8th Dist. Cuyahoga No. 110215, 2021-Ohio-1197, ¶ 6 (party who filed 14 appeals and five original actions declared a vexatious litigator where he attempted to relitigate issues and several of his appeals were not reasonably grounded in fact or warranted by existing law); *State ex rel. McGee v. Russo*, 8th Dist. Cuyahoga No. 109207, 2020-Ohio-497, ¶ 6, 8, 10 (party declared a vexatious litigator pursuant to Loc.App.R. 23(A) where original action and 16 of the 18 appeals party filed alleged the same facts and issues); *State ex rel. McGrath v. McClelland*, 8th Dist. Cuyahoga No. 97209, 2012-Ohio-157, ¶ 6-7 (party declared vexatious litigator pursuant to Loc.App.R. 23(A) where he had "continually taxed the limited resources of [the]

court" through the filing of 23 appeals and 13 original actions over 10 years and refiled appeals and original actions premised on the same arguments previously rejected by the appellate court). However, we caution Father that continued filing of appeals, motions or original actions that are not reasonably grounded in fact or warranted by law could result in his being declared a vexatious litigator pursuant to Loc.App.R. 23(B).

{¶ 38} OCSS' motion to have Father declared a vexatious litigator is denied.

{¶ 39} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
LISA B. FORBES, J., CONCUR